EDWARD BUSCH

v.

AARON and WILLIAM GROSS et al.

[Submitted September 11th, 1906.　Decided September 13th, 1906.]

1. A hotel proprietor may acquire a right to the exclusive use of the name of a place in conjunction with the word "Inn" for the name of his hotel.

2. Complainant commenced the business of keeping a licensed hotel in 1903 in a rented dwelling, which subsequently became well and favorably known as "The Metuchen Inn," the word "Metuchen" being the name of the borough in which the hotel was located.　No sign containing the words "Metuchen Inn" was ever placed on the building during complainant's occupancy, but soon after he removed to another house he used such sign.　Two months after he was so established defendants started to operate a hotel in the old place, and placed new signs bearing the same name on the old place, which had become well and favorably known because of the excellence of complainant's art as a hotel proprietor.—*Held*, that defendants' use of the name was a deception of the public, and that complainant was entitled to an injunction restraining such use.

On motion for injunction on return of order to show cause.

*Mr. George S. Silzer*, for the complainant.

*Mr. James W. Beekman*, for the defendants.

PITNEY, V. C.

The complainant, Busch, claims the exclusive right to use the words "Metuchen Inn" as a sign or designation of a hotel in the borough of Metuchen, in Middlesex county, and seeks to enjoin the defendants Gross and their tenant, the defendant Herson, from using that designation.

The facts are these:

Complainant, in the spring of 1903, commenced the business of keeping a licensed hotel in a dwelling never before used for

that purpose, known as the Robbins homestead, in said borough, of which he was a tenant for a term expiring May 1st, 1906.

He continued that business, and was successful therein.

During his tenancy and occupation the property was bought by the defendants Gross, and on the expiration of his term he left those premises and immediately established himself in the same business in a house on Perth Amboy avenue, in the said borough, and placed a sign over or in front of his building with the words "The Metuchen Inn" upon it, and at the time of the filing of the bill and the making of the motion he was continuing the business there under the name of the "Metuchen Inn."

It does not appear that any sign bearing the name "Metuchen Inn" was ever placed over or near the house occupied by complainant up to May 1st, 1906. If it was so placed, it was removed by the complainant. Two months later, and after complainant had so located himself in his new premises and put out his sign "Metuchen Inn," the defendants, having obtained a license to keep an inn or tavern in the premises recently vacated by the complainant, placed a sign in front of the house with the words "Metuchen Inn" upon it, and also placed a similar one at the entrance from the street into the yard. Of this action complainant complains, and asks that the defendants be restrained from using that name.

The solution of the question is not easy. The general rule is that the name of a place cannot be appropriated exclusively by any individual for trade purposes. But this rule has its exceptions. A leading exception is the famous Glenfield starch case. *Wotherspoon* v. *Currie, L. R. 5 E. & I. App. Cas. 518 (1872).* There a party had carried on the manufacture of starch at a very small unincorporated hamlet called Glenfield, near Paisley, in Scotland, and built up a trade in starch, which he called the Glenfield starch.

The factory was afterwards removed from Glenfield to another location near Paisley, called Maxwelltown.

Another party obtained a local situation in Glenfield, and commenced the manufacture of starch there, which he named Glenfield starch, and put it on the market as such. The new manufacturer was enjoined by Vice-Chancellor Malins. On

appeal to the intermediate court of appeals, the vice-chancellor's order was reversed by Lord-Justice James. The cause was brought to final hearing·before the vice-chancellor, when he remained of the same opinion, but dismissed the bill in obedience to the decree of the appellate court. The cause was carried to the house of lords, and the claim of the plaintiff was sustained by the unanimous opinion of Lord-Chancellor Hatherly, Lord Chelmsford and Lord Westbury, three strong judges.

In the case of *Newman* v. *Alvord, 49 Barb. 588,* and on appeal, *51 N. Y. 189,* the same principle was applied to the name of a cement manufactured at Akron, a village in the State of New York. The value of these cases as precedents does not seem to me to be affected by the apparently contrary view in *Glendon Iron Co.* v. *Uhler, 75 Pa. St. 467; 15 Am. Rep. 599.* (Other cases of the use of names of places are *Lee* v. *Haley, L. R. 5 Ch. App. 161; Seixo* v. *Provezende, L. R. 1 Ch. App. 192; McAndrew* v. *Bassett, 4 De G., J. & S. 380; Hine* v. *Lart, 10 Jur. 106.*)

It is to be observed, however, that these were mainly cases of trade marks proper, and the learning and rules of law governing trade marks must be applied with caution to cases like that now under consideration.

However, that a hotel proprietor may acquire a right in the name of his hotel I deem to be entirely settled by precedent and to be indisputable in reason. The case of *Howard* v. *Henriques, 3 Sandf. 725,* decided by the superior court of New York City in 1850, is a valuable authority on this subject. The case was heard before Chief-Justice Oakley and Justices Duer, Mason and Campbell, who agreed with Justice (previously vice-chancellor) Sandford, who heard the case in the first instance, all strong judges. The court in that instance sustained the exclusive right of the complainant to the use of the name "Irving" for his hotel. In delivering his opinion Justice Campbell uses this language: "If one man has, by close attention to the comfort of his guests, and by superior energy, made his hotel desirable for the traveler, and caused its name to become popular throughout the land, another man ought not to be permitted to assume the same name in the same town, and thus deprive him who first appropriated

the name of some portion of the fruits of that good will which honestly belongs to him alone."

And Vice-Chancellor Van Fleet adopts the same language in his opinion in *Wilcoxen* v. *McCray, 38 N. J. Eq.* (*11 Stew.*) *467* (at the bottom of *p. 468*). There, *38 N. J. Eq.* (*11 Stew.*), a person situate somewhat as are the defendants here sought to enjoin a person, the defendant therein, situate somewhat as the complainant is here, from using a name, "Norwood," for a boarding-house, which that defendant had previously applied to the house occupied by the complainant therein, and the vice-chancellor refused relief to the complainant, remarking: "The defendant, and not the complainant, is the person who first appropriated the name in question. If, in the estimation of any part of the public, the name represents anybody's skill and atten- tion, it is the defendant's, and not the complainant's. If the name is the distinctive badge of anybody's business or business reputation, it is that of the defendant, and not that of the com- plainant."

So here the abstract justice of the case is with the complain- ant, who gave the defendants' house all the reputation it ever had. But the great and only difficulty in the case is in the name which he has assumed. In the case in *3 Sandf., supra,* it was the "Irving Hotel." In the case of *Wilcoxen* v. *McCrea, supra,* it was the "Norwood," or "Norwood Hall." Those were names not connected with any place or locality. Here the complainant says in his bill that shortly after opening his hotel in 1903, he adopted the name of "Metuchen Inn," and opened said premises under said name, and that he was granted an inn and tavern license for said premises under said name, and that he expended a large sum of money in developing the business of the "Me- tuchen Inn," and that, by the exercise of his skill as a cook, he attracted to himself by the name of the "Metuchen Inn" a large business at said place, and that all of the time, up to the 1st of May, his business was there conducted under the name of the "Metuchen Inn." In his affidavit he says, speaking of the Rob- bins homestead, that he chose *"for the name of his hotel"* the name of the "Metuchen Inn," under and by which name the

same has been conducted by him since its adoption. Taking all the evidence together, I conclude that the name "Metuchen Inn" was given to the place as well as to the business, and the question is, in part at least, whether the complainant can rightfully complain that the defendants use for their hotel the name which the complainant himself has given it.

Take the case of the "Irving" house. If Mr. Howard, the successful suitor in that case, had left the "Irving" house and had established another hotel of the same name in another part of the city, could he successfully complain that his successor in the occupation of the original "Irving" house continued the use of the name? Or could Mrs. McCrea, who rented the "Norwood Hall" to Mr. Wilcoxen, successfully complain if he continued to call it "Norwood Hall?" And granting that the two questions just asked must be answered in the affirmative, the question still remains, Can the complainant here, who has named the former hotel with the name of the borough in which it is located, successfully claim that the defendants herein shall not continue to call their place by the name which the complainant gave it?

But before answering this question, let us see what the complainant asks by way of relief.

He asks two things: *First.* That the defendants shall be restrained from using the name "Metuchen Inn" in their business, and *second,* from displaying the same as a sign on their premises.

Now, I have found that, so far as appears, no sign was ever placed, containing the words "Metuchen Inn," over the Robbins homestead during the complainant's occupancy thereof, and that he first used that sign on his new place, and that two months after he had so established it in his new place, the defendants placed entirely new signs bearing that name on the old place. Here, then, was the first use by the complainant in connection with his present location of the sign containing the words "Metuchen Inn."

Under these circumstances, taking all the other matters into consideration, I have come to the conclusion that the defendants ought not to be permitted to continue the use of those signs. That use amounts, under the circumstances, to a statement to

the public that the hotel is kept by the complainant, and tends to mislead the public.

I will advise an order that the defendants be restrained from continuing to maintain on or over their premises any sign or signs containing the words "Metuchen Inn."