THE RUBBER AND CELLULOID HARNESS TRIMMING COMPANY

*v.*

THE RUBBER-BOUND BRUSH COMPANY et al.

[Submitted January 4th, 1912. Decided July 10th, 1912.]

1. In that class of cases of unfair competition denominated "passing-off" cases, the general rule is that it is not necessary that the complainant in order to succeed should prove misrepresentation or actual fraud by the defendant, or give any evidence that any single person was deceived. It is enough if, in the opinion of the judge, the symbol or device or get-up used by the defendant is one which so closely resembles the symbol, device or get-up used by the complainant as to be likely to deceive the public. If so, then the conditions required by the rules of law are fulfilled, and the decision of the question is one which must be committed to the eye and the sound judgment of the judge to whom the case is presented.

2. While the use of descriptive words cannot be defended upon the ground that they constitute a trade-mark, yet where a descriptive word has been before the public so long and to such an extent as that it would be unjust for anyone to simulate it, and thus enable his goods to pass off as the goods of another, equity, which looks at the substance and not the mere form of things, will prevent the use of such words and give the complainant relief by way of injunction.

3. Where it appeared that the trade-names "Rubberset," "Hard Rubber Set" and "Hard Rubber Set and Bound," of the complainant, have come to signify in the trade the brushes manufactured and sold by complainant, and that the use of the trade-name or mark "Rubber-Vulc" by the said defendant, and the use of the word "Rubber-Bound" as a part of the defendant's corporate title, are likely to confuse and deceive the public, and that their use would have the effect of permitting the defendant to derive advantage from the large expenditures made by complainant for its advertising and receive benefit from its outlay of money, and that said words "Rubber-Bound" were selected as a part of the corporate title of said defendant company with intent to profit by complainant's trade reputation, an injunction will be issued restraining the use by the defendant of the words "Rubber-Vulc" or "Rubber-Bound" as a trade or distinguishing mark of brushes manufactured or sold by it, and also restraining the use of the word "Rubber-Bound" as a part of its corporate name or title.

4. *International Silver Co.* v. *Rogers Co., 66 N. J. Eq. (21 Dick.) 140,* followed with respect to complainant's prayer for an accounting.

On final hearing on bill, answer, replication and proofs.

The bill in this case is filed to enjoin the defendants from the performance of acts which are alleged to lead to unfair competition in the business of manufacturing and selling brushes. The complainant began the manufacture of brushes in 1887, about which time it became the owner of two patents called the Read patents, for setting the knot of bristles in soft rubber and then vulcanizing the rubber, thus forming a new article of manufacture, which it claims is of greater efficiency and durability than any brush theretofore made. In putting out this new character of brush before the public the complainant used the words and phrases "Hard Rubberset," "Rubberset," "Hard Rubberset and Bound," to distinguish this special variety of manufacture from any others which were then or ever had been on the market. The words "Rubberset and Bound" and "Rubber-Bound" have not been used recently so much as formerly, though I do not consider them as abandoned. For all practical purposes the controversy is reduced to two items, the first of which is whether the defendant the Rubber-Bound Brush Company is wrongfully using a name or a mark to distinguish its goods, so nearly like the words used by the complainant as to be confusing and liable to

deceive the public, and second, whether the defendant may continue to use the phrase "Rubber-Bound" in its corporate name.

The Read patents expired in 1904, or thereabouts, since which time the complainant admits that the use of the processes described therein is open to the world.

The defendant the Rubber-Bound Brush Company began the manufacture of brushes, the bristles of which were set in rubber and vulcanized, in 1908, and has continued such manufacture down to the present time. It marked its brushes at that time with the words "Rubber-Bound," and continued to do so until the year 1909, when, upon the request of the complainant, it abandoned the use of that phrase and adopted instead thereof the word "Rubber-Vulc," under which name it has marketed its goods ever since.

On the first branch of the case the question is whether the word "Rubber-Vulc" is so close an imitation of the word "Rubberset" as that the public might be deceived or the unwary purchaser led to believe when he bought a brush marked "Rubber-Vulc" he was buying a brush manufactured by the complainant. It appeared in the case that the complainant for a number of years spent many thousand of dollars annually in advertising its goods under the names which it had chosen to designate them by and in such manner as to reach the ultimate purchaser, that is to say, the public generally; and that it had also adopted a peculiar "get-up" of its goods for purposes of display, which it avers has likewise to some extent been imitated by the defendant. It likewise appeared by the testimony of some witnesses that the use of the word "Rubberset" had in the brush trade come to mean goods manufactured by the complainant, and there was some evidence that the imitation of the complainant's goods by the defendant was so close as to be likely to deceive purchasers; that in certain places retail dealers had exhibited brushes of both manufacturers side by side in show cases, and had used the complainant's display racks for the indiscriminate exhibition of brushes of both makes, and that in at least two cases retail dealers had sold the product of the Rubber-Bound Company marked "Rubber-Vulc" as and for the goods of the complainant. The fact that the word "Rubberset" has come to mean the goods manufactured by

the complainant was testified to by Mr. Pushee and Mr. Erskine, witnesses produced on behalf of the defendant, and by Mr. Seidler and by Mr. Neidlinger, witnesses on behalf of the complainant— and the fact that the retail dealers did not distinguish between the two lines of manufacture in making their sales is testified to by Mr. Wright and Mr. Holtzman, witnesses produced on the part of the complainant. It likewise appears in the case that the complainant has registered the word "Rubberset," "Hard Rubberset," "Hard Rubberset and Bound" in the United States patent office, and that it claims protection in the use of these words and phrases under its letters patent.

*Mr. Alfred F. Skinner* and *Mr. Charles C. Gill* (of the New York bar), for the complainant.

*Mr. Elmer King, Mr. Charlton A. Reed* and *Mr. F. E. Tasker* (of the New York bar), for the defendants.

HOWELL, V. C.

In my opinion the primary and fundamental rules of law which govern the decision of this case are found in the case of *Reddaway* v. *Banham & Company (1896), A. C. 199; 65 L. J. Q. B. 381,* and in the opinion of the *International Silver Co.* v. *William H. Rogers Corporation, 66 N. J. Eq. (21 Dick.) 119; affirmed, 67 N. J. Eq. (1 Robb.) 646.* The *Reddaway Case* is the well-known case which related to the use of the words "camel hair" in connection with the manufacture and sale of belting for machinery. The phrase had been used by Reddaway in connection with his goods for many years. Banham, who was the leading spirit in the defendant corporation, had formerly been an employe of Reddaway; he left his employment there and went into the manufacture of a similar belting which he called Arabian belting, but afterwards manufactured belting which was sold under the name of "camel hair" belting. It was held by the house of lords in a series of remarkable opinions that the evidence showed that the phrase "camel hair" had acquired a secondary meaning in the trade, and that when anyone spoke of camel hair belting he meant belting manufactured by the complainant; that

the protection which the complainant might claim for the use of that particular name was not the protection which would be accorded to a trade-mark, for the reason that the words "camel hair" could not be appropriated as a trade-mark because they were purely descriptive words. Lord Herschell says: "The name of a person or words forming part of the common stock of language may become so far associated with the goods of a particular maker that it is capable of proof that the use of them, by themselves, without explanation or qualification, by another manufacturer, would deceive a purchaser into the belief that he was getting the goods of A when he was really getting the goods of B. In a case of this description mere proof by the plaintiff that the defendant was using a name, word or device which he had adopted to distinguish his goods would not entitle him to any relief; he could only obtain it by proving further that the defendant was using it under such circumstances or in such manner as to put off his goods as the goods of the plaintiff. If he could succeed in proving this, I think he would, on well-established principles, be entitled to an injunction."

The same rule was applied by Judge Lurton in the case of *Vacuum Oil Co.* v. *Climax Company, 120 Fed. Rep. 254,* in the circuit court of appeals for the sixth circuit. He says: "That a descriptive word or sign or symbol descriptive from popular use in a descriptive sense may acquire a secondary significance denoting origin or ownership is true, but this secondary significance is not protected as a trade-mark, for a descriptive word is not the subject of a valid trade-mark, the only office of a trade-mark being to indicate origin or ownership. When a descriptive or geographical word or symbol comes by adoption to have a secondary meaning denoting origin, its use in this secondary sense may be restrained if it amounts to unfair competition. In such case if the use of it by another be for the purpose of palming off the goods of one as and for the goods of another, a court of equity will interfere for the purpose of preventing such a fraud, but this kind of relief depends upon the facts of each case and does not at all come under the relief applicable to the infringement of a trade-mark." *La Republique Francaise* v. *Saratoga Vichy Co., 191 U. S. 427.*

In my opinion, it is clearly proved in this case that the words used by the complainant, and particularly the word "Rubberset," have come to mean goods manufactured by the complainant, and that if the complainant has established, as a matter of fact, that the defendant is using the same or a similar name to designate its goods, so that it may be said that the defendant is representing its goods as the goods of the complainant, then the complainant is entitled to the injunction prayed for.

I understand the general rule to be that in that class of cases, which is denominated "passing-off" cases, it is not necessary that the complainant in order to succeed should prove misrepresentation or actual fraud by the defendant, or give any evidence that any single person was deceived. It is enough if in the opinion of the judge the symbol or device or get-up used by the defendant is one which so closely resembles the symbol, device or get-up used by the complainant as to be likely to deceive the public. If so, then the conditions required by the rules of law are fulfilled, and the decision of the question is one which must be committed to the eye and the sound judgment of the judge to whom the case is presented. This rule, and all the English cases on the point, will be found in a very recent case—*Bourne* v. *Swan & Edgar* (*1903*), reported in *1 Ch. 211; 72 L. J. Ch. 168* (*1903*). This English case is cited in order to call attention to its exhaustive argument and line of discriminating cases, but the rule in this state is the same, as will appear by an examination of *Müller Tobacco Co.* v. *Commerce, 45 N. J. Law (16 Vr.) 18; International Silver Co.* v. *Rogers Corporation, supra,* and *Eureka Fire Hose Co.* v. *Eureka Manufacturing Co., 69 N. J. Eq. (3 Robb.) 159.*

As a matter of fact, however, it sufficiently appears in this case by the testimony of Mr. Wright and Mr. Holtzman that there was a great liability to deception. Besides, in my opinion, a careful examination of the exhibits demonstrate the proposition for which the complainant contends. Taking into consideration the marks and get-up of the goods, the similarity in appearance, the resemblance which the words have to each other, and the fact that the word "Rubber" is the principal and most obtrusive word used by each, and the great probability of the indis-

criminate display of the goods of the two manufacturers, I am led to the conclusion that the unwary purchaser or the indiscriminating buyer would be as likely to get the goods of the defendant as the goods of the complainant, if he sought to buy a brush whose bristles were set in hard rubber. This probability is increased when we consider that in the defendant's get-up and advertising display matter the name of the defendant corporation appears more or less conspicuously, having likewise for its most prominent feature a descriptive term which would tend to further confusion.

The foregoing cases, and the rules deducible therefrom, demonstrate the proposition that while the use of descriptive words cannot be defended upon the ground that they constitute a trademark, yet that where a descriptive word has been before the public so long and to such an extent as that it would be unjust for anyone to simulate it, and thus enable his goods to pass off as the goods of another, equity, which looks at the substance and not the mere form of things, will prevent the use of such words and give the complainant relief by way of injunction. The rules are of rather easy application in the case in hand. The complainant has spent immense sums of money in advertising its wares under the names above mentioned. This has had the effect of placing the complainant's distinguishing words before the people of the United States and of informing them that the particular style of brush advertised was manufactured by the complainant. To allow the defendant to simulate this brand, although it is not a trade-mark, would be to permit it to take advantage of the large expenditure made by the complainant for such advertising and thus get a benefit from its outlay of money, and to that extent nullify the benefit which the complainant designed for itself. In my judgment, it is very clear that the rubber-bound company has violated this equitable right of the complainant, and that it should be enjoined therefrom as prayed by the bill.

The remaining question is whether the defendant the Rubber-Bound Brush Company should be permitted to continue the use of its present corporate name. I do not think that it should. The situation is very much like that in the case of the *Interna-*

*tional Silver Co.* v. *William H. Rogers Corporation,. supra.* There the vice-chancellor declined to enjoin the use of the word "Rogers" in the defendant's corporate title. On appeal from this portion of the decree (*67 N. J. Eq.* (*1 Robb.*) *646*) there was a reversal upon the ground that the assumption of the word "Rogers" in the corporate title of the defendant company was a portion of the proceeding by which the public were to be deceived. The use of the words "Rubber-Bound" in the corporate title are quite as objectionable as their use upon the goods themselves, when we take into consideration the fact that the name of the defendant corporation appears in its advertising and display matter and on some of the boxes which contain the goods. The case is stronger than the *Rogers Case,* for the reason that there Rogers was using his own name in the corporate title; here the name used is one which the defendant ceased using on its goods at the request of the complainant in 1909, and I can perceive no reason why the point should have been yielded as to the goods and insisted upon as to the corporate name.

The bill prays for an accounting of all profits which the defendant has made from the sale of brushes having thereon labels, marks or devices resembling the complainant's, and all profits that the complainant would have made by the sales of its brushes if the imitation of the said marks had not been made. I am constrained to deny this prayer upon the ground and for the reasons stated by Vice-Chancellor Stevens in the *Rogers Case.* The report of his judgment on this point is found in *66 N. J. Eq.* (*21 Dick.*) *140*, and it was affirmed on appeal.

The defendants urge that the complainant is not entitled to bring this suit in its own name, that it should have been brought in the name of the Rubberset Company, a New York corporation organized by direction of complainant, under which name the complainant has advertised and sold certain of its wares. The allegations of fact on this point are without dispute, but I do not think that the use of the name of the New York corporation in a few instances would be sufficient either to bar relief on the merits to the complainant or to disqualify it as a party complainant. It clearly appears that the business connected with the manufacture of brushes belongs to the complainant, is conducted

by it, that it receives all the money and pays all the bills, and that the New York corporation is a mere instrument of convenience for the transaction of the business by the complainant; on this branch of the case the decision must be for the complainant.

There is another objection made by the defendants, however, which has force, and must be decided in their favor. The complainant made the corporation of Hanlon & Goodman a party to the suit upon the supposition and allegation that Hanlon & Goodman was engaged in and interested in the manufacture of brushes with the other defendant the rubber-bound company. It is clearly proven that the only connection between the two companies or between the officers of the two companies is that of stockholder and director, and I therefore conclude that it is not a proper party to the suit, and that as to it the bill must be dismissed.