PHILLIP HILTON

*v.*

JOSEPH HILTON.

[Decided August 14th, 1917.]

1. No one has a right to palm off his goods as those of another by using another's name so as to obtain its business and so as to deceive the purchasing public.

2. Plaintiff was with defendant in a clothing business and in the operation of stores under the name of "The Hilton Co.," and purchasing defendant's interest in the business, "including all the name and good-will of said business," knowing that defendant intended to go into the same business, and consenting to the use of the name "Hilton's" by defendant in a certain place. Thereafter defendant opened stores known as "Hilton's," some of which were near those of "The Hilton Co.," and used

signs whose characteristics were similar to those used by "The Hilton Co.," and practically identical window displays and similar show cards and labels, so that there was nothing by which the ordinary observer could distinguish defendant's stores from plaintiff's.—*Held*, that defendant would be enjoined from the use of the name both on the grounds of unfair competition and of the breach of the provisions of the bill of sale.

3. The fact that complainant was selling from five to ten per cent. of its goods as having been manufactured by it, which were not in fact made by it, where most of its advertisements were consistent with the idea that the goods were not manufactured, but selected by it, would not defeat its right to an injunction.

4. The name "Hilton's" in a certain place was not broad enough to cover defendant's operation of other stores under that name in competition with complainant's stores.

5. The fact that a similar business under the name "Hilton's" was conducted elsewhere to a small extent in a non-competitive community would not prevent relief.

6. In a suit to enjoin the use of a name upon the ground of unfair competition, it is not necessary that an actual fraudulent intent on the part of the user be shown or that any single person was in fact deceived by the use of the name.

On bill. On final hearing.

*Messrs. Pitney, Hardin & Skinner* (*Mr. John R. Hardin* and *Mr. Edward O. Stanley, Jr.*), for the complainant.

*Mr. Selick J. Mindes* and *Mr. Robert H. McCarter*, for the defendant.

LANE, V. C.

The bill seeks an injunction to prevent defendant using the word "Hilton's" to designate the places at which he carries on a clothing business. The case has taken six or seven days to try. It has been elaborately orally argued and elaborate briefs have been submitted. The testimony has not been written out, and I am relying upon my recollection in stating the facts. Some may be misstated, but not to an extent which would change the result. If either counsel observe apparent mistakes, I wish they would call my attention to them.

In 1904 there was a manufacturing clothing business carried on in the city of Newark by one I. Hilton under that name. About that time there became associated with him the defendant, Joseph Hilton. A store was opened in that year in Philadelphia and the name adopted was "The Hilton Co." Subsequently, in 1907, the name "The Hilton Co." was adopted for the store in Newark. Between 1910 and 1914 the name "The Hilton Co." was abandoned in Newark and the name "George Watson & Co." substituted. This was due to the fact that the Hiltons had acquired the established business of George Watson & Co. in Newark. In 1910 a store was opened in Brooklyn under the name of "The Hilton Co.;" in Providence in 1914; in Pittsburgh in 1913; Chicago in 1913; Boston in 1909, and in New York in April, 1906. Phillip Hilton became associated in the business with Joseph Hilton, and in 1916 Phillip and Joseph were the joint owners of the business. On the 24th day of June, 1916, a sale of Joseph's interest to Phillip was consummated and a bill of sale delivered which conveyed the interest of Joseph in the business, "including all the name and good-will of said business and all its assets." Joseph intended to go into the same business. Phillip knew this. Prior to the consummation of the sale a store had been leased ostensibly for the two sons of Joseph in Paterson. I conclude that it was in the mind of Joseph at that time to himself become associated with his sons, or to supplant his sons. As a matter of fact, when the store was opened Joseph was the owner. I think Phillip knew that the store was to be opened in Paterson, and the preponderance of evidence is to the effect that he consented to the use of the name "Hilton's" by the sons in Paterson. Goods were manufactured by "The Hilton Co." for use in the Paterson store, and I must conclude that Phillip knew of their manufacture. In the latter part of 1916, "The Hilton Co." had four stores in New York, located at 85 Nassau street, New York, corner of Fourteenth street and Broadway, New York, Thirty-seventh street and Broadway, New York, and 412 Fulton street, Brooklyn; Joseph conceived the idea of opening stores in New York, and proceeded to do so; he now has in New York three stores, located at Thirty-third street and Fifth

avenue, 243 Broadway and Thirty-sixth street and Broadway. These stores, or some of them, are in comparatively close proximity to some of those of "The Hilton Co." Joseph now contemplates opening a store in Brooklyn, in comparatively close proximity to that of the "Hilton Co.," and another in New York immediately opposite the Nassau street store of the "Hilton Co." Each of these stores are designated by prominent signs as "Hilton's." The signs, while unlike in color and in material used, yet have such characteristics similar to those used by "The Hilton Co.," as that it cannot be said that there are any distinguishing features which would differentiate to the ordinary observer "Hilton's" stores from "The Hilton Co." stores. The window displays are practically identical. The evidence is that there are no marks which would be noticed by the ordinary observer distinguishing window dressings in stores of this nature. The show cards used, while not identical, are yet similar. It is so with the labels. Prior to 1916, "The Hilton Co." had done considerable advertising in newspapers in various localities in which it had stores, although none to any extent in the city of New York. It had advertised in the city of New York by means of show cases placed in prominent places in the Hudson terminal and also by posters placed in the tube trains. I know of no more effective method of advertising, and I cannot shut my eyes to the fact that I have myself, before I ever heard of this case, noticed these advertisements and knew that there was such a concern as "The Hilton Co." or "Hilton's" which sold men's suits. In some of the advertisements used before 1916 the words "Hilton" and "Hilton's" were used. In others, the words "Hilton Clothes" and like phrases. The complainant's original claim seemed to be based upon the ground that the term "Hilton's" had acquired a secondary meaning, and a large part of the argument was devoted to the question as to whether or not the proofs show that this secondary meaning had attached. The view that I take of the case renders it unnecessary for me to determine whether the complainant has substantiated its claim in this respect or not. The distinction has been drawn between the right of the complainant to enjoin the use of the name "Hilton's," based upon the provisions of the

bill of sale and the right based upon unfair competition. I think so far as this case is concerned, it is a distinction without a difference, because the same facts which would result in enjoining the use of the name because of the grant contained in the bill of sale would induce the court to enjoin its use because of unfair competition.

The question is one of fact. The legal rules are settled. Chancellor Walker said, in *National Biscuit Co.* v. *Pacific Coast Biscuit Co., 83 N. J. Eq. 369* (at *p. 371*) : "The underlying principle that no man has a right to palm off his wares as those of another, thereby cheating the purchasing public and filching the business of a rival, is so essentially an element of natural justice, and so solidly imbedded in our jurisprudence that all that is necessary to quicken a court of equity, is to show that in the particular instance the offence has been committed."

Vice-Chancellor Backes, in *Cape May Yacht Club* v. *Cape May Yacht and Country Club, 81 N. J. Eq. 454, 456,* said: "Jurisdiction of courts of equity to prevent injury from infringement of trade names has been liberally exercised and applied in all circumstances whenever it appeared that the name was an established, distinctive and valuable adjunct to an undertaking, whether used to distinguish manufactured articles, a place of business, or a corporation, commercial or one formed not for pecuniary gain. All that is required to bring into activity the injunctive powers of the court is to inform it that the complainant's trade is in danger of harm from the use of its name by the defendant in such a way as is calculated to deceive the public into the belief that the defendant's affairs in the respect complained of are those of the complainant."

Vice-Chancellor Howell said (and his opinion was approved by the court of errors and appeals in *81 N. J. Eq. 519*), in *R. C. & H. T. Co.* v. *Rubber Bound Brush Co., 81 N. J. Eq. 419* (at *p. 424*): * * * "it is not necessary that the complainant in order to succeed should prove misrepresentation or actual fraud by the defendant, or give any evidence that any single person was deceived. It is enough if, in the opinion of the judge the symbol or device or get-up used by the defendant is one which so closely

resembles the symbol, device or get-up used by the complainant as to be likely to deceive the public. If so, then the conditions required by the rules of law are fulfilled, and the decision of the question is one which must be committed to the eye and the sound judgment of the judge to whom the case is presented."

The court of errors and appeals said, in *Munn & Co.* v. *The Americana Co., 83 N. J. Eq. 309,* that "fraudulent conduct on the part of the defendant is a necessary element," citing *International Silver Co.* v. *Rogers, 71 N. J. Eq. 560, 563.*

The court does not state what constitutes fraudulent conduct or what proof is required from which fraudulent intent may be inferred.

Vice-Chancellor Emery said, in *Eureka Fire Hose Co.* v. *Eureka Rubber Mfg. Co., 69 N. J. Eq.* (at *p. 167*) : "This protection is granted without regard to the intent of the infringer, because a fraudulent intent to deceive the public and appropriate the benefit of the trade reputation of another is conclusively presumed, from the using of the name or mark after request to desist, although the absence of such intent may in some cases be a defence to an action for damages."

And see also *Wirtz* v. *Eagle Bottling Co., 50 N. J. Eq. 164; International Silver Co.* v. *Rogers, 66 N. J. Eq. 119* (at *p. 129*) ; *National Biscuit Co.* v. *Pacific Coast Biscuit Co., 83 N. J. Eq.* (at *p. 380*).

Expressed briefly, I think the rule is that "unfair competition" is "fraudulent conduct."

Examining the facts in the light of the rules of law hereinbefore referred to, it seems to me that it cannot seriously be argued that the use by the defendant of the name "Hilton's" in the manner it is used in connection with stores in close proximity to those of "The Hilton Co." cannot but lead to confusion, and tend to injure the good-will of the complainant, his interest in which the defendant sold to the complainant. I must consider that I am a man of ordinary intelligence, and that I proceed with ordinary care and caution, and I know that if I walked down Nassau street, New York, having seen the sign of "The Hilton Co." in the Hudson terminal and desired to buy a suit of clothes

as advertised, if I first saw on one side of the street the store of the defendant with the sign "Hilton's," I would immediately reach the conclusion that it was the same establishment which had advertised in the Hudson terminal. If by chance I glanced across the street and saw another store with the words "The Hilton Company" over it, then I might wonder why the company had two stores in such close proximity, and I might be led to investigate as to which of the stores really had done the advertising. If, however, I walked into the store of the defendant at Thirty-third street and Fifth avenue, there would be nothing which would tend to raise my suspicions that that store was not that of the party advertising. The word "Hilton's" is the popular possessive of the words "The Hilton Co.," just as "Macy's" is of R. H. Macy & Co. It seems to me that if the defendant can be allowed to open a store opposite or in close proximity to the stores of the complainant under the name of "Hilton's," then there is no objection to a store being opened opposite or in close proximity to "Macy's," and the use by such store of the designation "Macy's."

There are three affirmative defences set up by the defendant—

*First.* It is insisted that the complainant is perpetrating a fraud upon the public by selling goods advertised as manufactured by it which are not, in fact, so manufactured, and that the case is within *Perlberg* v. *Smith, 70 N. J. Eq. 638.*

The proofs disclose that at the present time a very large proportion of the clothing is manufactured by the "company"—I think between ninety and ninety-five per cent. The proportion of goods actually manufactured has steadily increased. While some of the advertisements may be said to leave the impression on the mind that the goods sold are actually manufactured by the "company," yet most of them are consistent with the idea that the goods are not so manufactured but are selected by the "company." It makes no difference to the public by whom the goods are manufactured so long as the public is satisfied with the article that it gets. The reputation of the "company" has grown, not because of the fact that it manufactures the article, but because it produces to the public an article that the public wants. The

good-will that has resulted is entitled to protection. I do not think that the case is within *Perlberg* v. *Smith,* but rather within the reasoning of *Johnson & Johnson* v. *Seabury & Johnson, 71 N. J. Eq. 750; New York and New Jersey Lubricant Co.* v. *Young, 84 N. J. Eq. 469* (reversing Vice-Chancellor Stevens, *77 N. J. Eq. 321*) ; *Regent Shoe Mfg. Co.* v. *Haaker (Neb., 1906), 106 N. W. Rep. 595; 4 L. R. A. (N. S.) 447.*

*Second.* The defendant insists that the complainant acquiesced in the use of the word "Hilton's" by the defendant. There is no proof of any acquiescence on the part of the complainant except with respect to the use of the name by the sons of Joseph in Paterson. Assuming the testimony on the part of the defendant with respect to this to be true, there was a statement made by Phillip to the wife of Joseph and one of the sons that he did not care if they opened in Paterson, what name they used so long as they did not use the name of "The Hilton Co." I do not believe that Phillip ever intended to permit the use by Joseph, or by the sons, of the word "Hilton's" in any way which would result in unfair competition. It is almost inconceivable. I rather assume that he thought that the use of the term "Hilton's" in Paterson would not result in unfair competition with his stores. The Paterson store has been discontinued, so that I do not have to determine whether I would enjoin the use of the word "Hilton's" in Paterson. The consent was not broad enough to cover the stores in New York or in any other place where the result would be competition with "The Hilton Co." stores. I think the acquiescence presents no obstacle to relief.

*Third.* It is insisted that because in Perth Amboy a similar business was conducted under the name of "Hilton," and also in Yonkers, that the complainant is not entitled to relief. There is no proof whatever that the store in Yonkers, which has now been discontinued, or the store in Perth Amboy in anywise competed with any "Hilton Co." store. Although the name may be used elsewhere, yet such use if in a non-competitive community or to a small extent will not prevent relief.

Upon the ground of unfair competition, and because it is an attack upon the good-will of "The Hilton Co.," the use of the term

"Hilton's" by the defendant to designate his stores, which are in competition with those of "The Hilton Co.," will be enjoined.

Throughout these conclusions I have used the term "it" to refer to "The Hilton Co." for convenience.

Counsel on both sides have referred to many cases from foreign jurisdictions. I have considered it unnecessary to deal with them, as I think the rules applicable are settled by prior decisions in this jurisdiction.

Counsel may present a form of decree on Monday, August 13th, or Wednesday, the 15th.