Complainant seeks an injunction to protect her established trade name of "Broadway Juvenile Shop." She charges unfair competition. Complainant's retail business in infants' and juvenile wear was established at 211 Broadway, Camden, New Jersey, in 1931; on December 9th, 1931, she filed, in the office of the clerk of Camden County, a certificate of the adoption of the name under which she was doing business.
Ever since the establishment of her said retail store, complainant has used and publicized her trade name. From 1931 until 1933 her store was at 211 Broadway, from 1933 until *Page 477 
April 23d 1945, at 215 Broadway, and from April 23d 1945, until the present at 703 Broadway. For the past six years she has also operated a retail store at Bridgeton, New Jersey, and she now designates both stores as "Broadway Juvenile Shops."
Complainant's stores at 211 and 215 Broadway, in a retail shopping district, were most advantageously located. In the same city block, and on the same side of Broadway, there is a well known and well patronized moving picture theatre, the Grand. This theatre is open day and evening, and in the evening the front of the theatre is brilliantly lighted.
From 1931 until the present complainant has continuously advertised her business under the name "Broadway Juvenile Shop" or "Broadway Juvenile Shops." Large signs bearing one or the other of these names have been maintained on the front of her stores; her business stationery, price tags, gift articles, and delivery boxes and bags have borne these names; she has regularly advertised in the Camden Daily Courier, the Bridgeton DailyNews and other newspapers, and many times a day through "spot" announcements over Camden's municipal radio station, and, by billboard, circulars and other media, always using these names. Complainant has also frequently conducted prize contests, open to the public, in her stores and in these names. Her average expenditure with the Camden Daily Courier for advertising has been $1,000 per year, and her husband (who assists her in her business) testified that she has spent at least $25,000 in advertising her trade name since she established her first Camden store in 1931.
About two years ago a retail store was opened at 204 Broadway, Camden, almost directly opposite the complainant's store at 215 Broadway. A large sign over the show windows and the entrance identified the new store as "The Stork Gift Shop." The type of merchandise sold there is indicated by defendant's trade name — babies' wear and gifts; juvenile wear was not sold. Sometime prior to April 23d 1945, the defendant was incorporated and it took over The Stork Gift Shop; still juvenile wear was not sold there. But, at *Page 478 
or about the time the complainant moved her store from opposite the store of the defendant to 703 Broadway, some five blocks south, the defendant began to stock and to promote the sale of juvenile wear. Also, the defendant caused two new signs to be painted on and across the top of its show windows; the words chosen by it were the last two words of complainant's trade name, "Juvenile Shop."
When, on April 23d 1945, complainant moved her store from opposite that of the defendant she had been established in that city block for thirteen years. Just six weeks later, on June 4th, 1945, the complainant observed that the "Juvenile Shop" signs were being painted upon the show windows of the defendant's store. She immediately advised the defendant by letter that she objected to the use of these words, and considered the display an infringement upon her trade name. Through its attorney, the defendant replied asserting that it had a right to use the words and display the signs. An officer of the defendant testified that the signs had been ordered quite some time before they were painted but that the painter could not do the work until June 4th, 1945. There was also some testimony relative to an attempted compromise between counsel representing the parties on the words to be used and displayed by the defendant. The complainant, however, objected to the use of the word "juvenile" in defendant's signs and this suit was instituted. The defendant continues to maintain the two "Juvenile Shop" signs upon the show windows of its store.
Defendant did not substitute the "Juvenile Shop" signs for its large "Stork Gift Shop" sign. It displays both signs, so that to a person shopping on Broadway the signs might well indicate that two shops were accommodated in defendant's building. UnitedCigar Stores Company of America v. United Confectioners
(Court of Errors and Appeals), 92 N.J. Eq. 449, 450;113 Atl. Rep. 226. The new signs are made conspicuous in the evening because of the bright lights behind them in the defendant's store windows; its original sign above its store, "The Stork Gift Shop" is not directly lighted and would not, in my opinion, *Page 479 
attract the attention of the ordinary Broadway shopper after dark.
Defendant's buyer and store manager was quite frank in her admissions relative to the situation which developed after the complainant moved her store. She testified that on many occasions individuals entered the defendant's store and asked if it was the "Broadway Juvenile." She knew, she said, that those persons were referring to complainant's "Broadway Juvenile Shop." She knew that the complainant had moved to 703 Broadway. What she did was this: "A. I have instructed all employees to tell them we are the Stork and Gift shop, that they are in the Stork and Gift Shop, but that we carry juvenile clothing, and we try to sellthem our merchandise, but we tell them the Juvenile Shop had moved down to the 700 block and we were the Stork and Gift Shop." (Italics mine.) These questions were also asked, and she gave these answers: "Q. Have you personally told people to go down to 703 Broadway? A. I certainly have. `Is this the Broadway Juvenile?' `No, the Broadway Juvenile moved to 703,' or`the 700 block. Can we help you,' and try to sell them ourmerchandise, but we do tell them the Broadway Juvenile have moved. We are not sending them out deliberately, but we do advise them the correct location of the store. Q. How many girls work in the store? A. Four. Q. And each of those girls have done the same thing, sent them down there? A. I have overheard them many times." (Italics mine.)
The defendant's plan to sell juvenile wear and the efforts of its manager and sales persons were, obviously, successful. Its manager testified that fifteen or twenty per cent. of its recent business has been in juvenile wear. How much of this trade was taken from the complainant it would be impossible to ascertain but complainant testified that there hal been a falling off in her business since she moved from opposite the defendant.
This court has the power to restrain the improper use of a trade name. The law allows and encourages fair, open and honest competition, but it interdicts a merchant from taking a fraudulent advantage of his rivals by dealing under false *Page 480 
colors and selling his goods as those of his competitors. In the words of Mr. Justice Knapp, in Miller Tobacco Manufactory v.Commerce, 45 N.J. Law 18, rivalry of that kind "`is not fair competition; it is closer akin to piracy.'" Van Horn v.Coogan, 52 N.J. Eq. 380; 28 Atl. Rep. 788; affirmed, 52 N.J. Eq. 588; 33 Atl. Rep. 50.
Rival merchants have no right, by imitative devices, to mislead prospective purchasers into buying their merchandise under the impression that they are buying that of their competitors, and the use of such devices or means may be enjoined. The law guards the trade name and good-will of a merchant, and thereby the public, against unlawful injury. A. Hollander, c., Inc., v.Philip A. Singer, c., Inc., 119 N.J. Eq. 52;180 Atl. Rep. 671; affirmed, 120 N.J. Eq. 76; 183 Atl. Rep. 296; Robert H.Ingersoll Brother v. Hahne Co. (Court of Chancery),89 N.J. Eq. 332; 108 Atl. Rep. 128.
The complainant is not bound to show, as an indispensable prerequisite to her right to relief, an exclusive property right in the words "Juvenile Shop;" her right to the protection she asks must be considered to be fully established if it satisfactorily appears that the defendant has made use of these words as an imitative device for the purposes of deception — to beguile customers of the complainant, confused at not finding the complainant at her old location, into its store where they might be persuaded to purchase its juvenile wear. Van Horn v.Coogan, supra (at p. 384), of the state report.
One may not lawfully use a trade name as near the established name of another as to lead customers and the public to suppose that the establishment of the user is the establishment of the other or that the product sold is the product of the other.Busch v. Gross (Court of Chancery), 71 N.J. Eq. 508;64 Atl. Rep. 754; O'Grady v. McDonald (Court of Chancery),72 N.J. Eq. 805; 66 Atl. Rep. 175; Rubber, c., Co. v.Rubber-Bound Brush Co., 81 N.J. Eq. 419; 88 Atl. Rep. 210;affirmed, 81 N.J. Eq. 519; 88 Atl. Rep. 210; National BiscuitCo. v. Pacific Coast Biscuit Co. (Court of Chancery),83 N.J. Eq. 369, 380; 91 Atl. *Page 481 Rep. 126; Hilton v. Hilton (Court of Errors and Appeals),90 N.J. Eq. 564; 107 Atl. Rep. 263; Bayuk Cigars, Inc., v.Fine, 112 N.J. Eq. 166; 163 Atl. Rep. 799; affirmed, 114 N.J. Eq. 83; 168 Atl. Rep. 303.
It is not necessary that one using a trade name or slogan which interferes with another's prior right thereto, should have adopted such name with intent to deceive the public or to injure that other to move the court to enjoin; the consequences of the defendant's acts and not the motive for them, determine whether this court should interfere. Polackoff v. Sunkin (Court ofErrors and Appeals), 115 N.J. Eq. 134; 169 Atl. Rep. 724. See, also, Delaware, Lackawanna and Western Railroad Co. v.Lackawanna Motor Freight Lines, Inc. (Court of Chancery),117 N.J. Eq. 385; 175 Atl. Rep. 905, and R.B. Davis Co. v.Sher (Court of Chancery), 125 N.J. Eq. 316; 5 Atl. Rep.
2d 49. This court has gone so far as to declare that if an interfering trade name is actually misleading, intention to mislead will be conclusively presumed. Eureka Fire Hose Co. v.Eureka Rubber Manufacturing Co., 69 N.J. Eq. 159;60 Atl. Rep. 561; affirmed, 71 N.J. Eq. 300; 71 Atl. Rep. 1134, application for modification of injunction, 72 N.J. Eq. 555;65 Atl. Rep. 870. "`Unfair competition'" is "`fraudulent conduct.'" Hilton
v. Hilton, 89 N.J. Eq. 149, 154; 102 Atl. Rep. 16.
"The jurisdiction of courts of equity to prevent injury from infringement of trade-names has been liberally exercised and applied in all circumstances whenever it appeared that the name was an established, distinctive and valuable adjunct to an undertaking, whether used to distinguish manufactured articles, a place of business, or a corporation, commercial, or one formed not for pecuniary gain. All that is required to bring into activity the injunctive powers of the court, is to inform it that the complainant's trade is in danger of harm from the use of its name, by the defendant, in such a way, as is calculated to deceive the public into the belief that the defendant's affairs, in the respect complained of, are those of the complainant."Cape May Yacht Club v. Cape May Yacht and Country Club
(Court of Chancery), 81 N.J. Eq. 454, 456; 86 Atl. Rep. 972. *Page 482 
Defendant makes much of the fact that the words "juvenile" and "shop" are generic or descriptive words, and insists that, therefore, it has the legal right to display them together upon the show windows of its store. Defendant cites Coca-Cola Co. v.Nehi Corp. (Supreme Court of Delaware), 36 Atl. Rep. 2d156, and stresses the general rule that, since a common, generic, or descriptive word, name or term is not originally subject to exclusive appropriation as a trade name, a charge of infringement or unfair competition cannot be predicated upon the mere use, without fraudulent intent, of such a name, word, or term although it is already in use by another. 52 Am. Jur.,Trade-Marks, Trade Names, c., ¶ 130. It is now the established law, however, that such a word or name may, by usage, acquire a secondary, special, or trade meaning as indicating or identifying the goods, business or services of the user, as distinguished from its primary, common or general meaning, so as to entitle him to protection, under the law of unfair competition, against the subsequent unfair or piratical use thereof by another. 52 Am. Jur., Trade-Marks, c., ¶ 72. EurekaFire Hose Co. v. Eureka Rubber Manufacturing Co., supra;Rubber, c., Co. v. Rubber-Bound Brush Co., supra.
The Coca-Cola-Nehi Corp. Case involved more than "unfair competition." Trade-mark infringement as well as unfair business competition was alleged and the complainant relied, in part, upon the terms of a written contract for the relief it sought. Furthermore, the court recognized, in that case, that the word "cola" had been used denominatively by many manufacturers of cola beverages, and found as a fact that the names used by the defendant to designate its beverages bore no confusing resemblance to "Coca-Cola." The Supreme Court of Delaware, in its opinion sustaining the Chancellor, declared that one entering into an already occupied field must take care to avoidunnecessary adoption or imitation of a confusing name.
In the case at bar the complainant had specialized in the sale of juvenile wear and had advertised that fact for more than twelve years before the defendant's predecessor opened *Page 483 
a store on Broadway. When the defendant determined to sell juvenile wear it had already established and publicized its trade name, "The Stork Gift Shop." If, in ordering the new signs to be placed upon its show windows its purpose was only to notify those who passed its store that it had added another line of merchandise, it was assuredly "unnecessary" for it to resort to the use of words then identified with and identifying complainant's business. Defendant's manager admitted that other descriptive words of similar significance could have been employed, and that she had never known of an instance where a person or a firm, except the complainant and the defendant, had ever employed the term "Juvenile Shop" to advertise or sell clothing for children in the Philadelphia-Camden-South Jersey district. Certainly it was unnecessary for the defendant to use the word "shop" and to join it with the word "juvenile." Even the classified sections of the Philadelphia and the Camden telephone directories do not list merchants selling juvenile wear under titles such as "Juvenile Stores," "Juvenile Clothing," or "Juvenile Wear."
Our New Jersey courts have frequently declared that no person should be permitted to "unnecessarily" use even generic or descriptive words or his own name in the prosecution of his business in such a manner as to inflict injury upon another.
In International Silver Co. v. William H. Rogers Corp.
(Court of Errors and Appeals), 67 N.J. Eq. 646;60 Atl. Rep. 187, the Court of Errors and Appeals reversed this court, to direct that the defendant be enjoined from using the name "Rogers" although one of its incorporators was a William H. Rogers. Mr. Justice Swayze, speaking for the court, said: "`* * * No person is permitted to use his own name in such a manner as to inflict an unnecessary injury upon another. The corporators chose the name unnecessarily, and having done so for the purpose of unfair competition, cannot be permitted to use it to the injury of the complainant' * * * If the defendant had honestly desired to avoid that confusion, much more efficient means were available. The defendant was under no compulsion to use the name `Rogers' at all, and if *Page 484 
that name had not been used confusion would have been impossible. * * * In the present case the corporate name was selectedunnecessarily, with the intent to make an unfair use of it." (Italics mine.)
The defendant called the court's attention to the opinion of Chancellor Harrington of Delaware, in the Coca-Cola-Nehi Corp.Case. (Delaware Court of Chancery, 25 Atl. Rep. 364). The weakness of defendant's position is exposed in that opinion. The Chancellor did not say that one could not be guilty of infringement or unfair competition if the words he borrowed and imitatively used were generic or descriptive words. He said that one would not "ordinarily" be guilty, provided "otherdistinguishing features clearly appear." (Italics mine.) And, as Vice-Chancellor Leaming aptly said: "A question of this nature necessarily depends largely upon the special circumstances of the individual case." O'Grady v. McDonald, 72 N.J. Eq. 805, 807;66 Atl. Rep. 175.
In the Delaware case distinguishing features did appear; in the instant case they do not. The only words displayed on the defendant's show windows are the latter two words of complainant's trade name. Defendant did not choose to use such words as "youth" or "children" or "junior," and in wording and placing its signs made no effort to distinguish its store from the shop of the complainant. In this connection it is most significant that, in testifying, defendant's store manager used the identical words displayed by her employer to designate the complainant's store and business and that she quoted persons who had visited the defendant's store inquiring for the complainant as using just those words. Her testimony is persuasive that the word "juvenile" in the complainant's trade name is the word which impresses itself upon the minds of customers and the public as the identifying symbol of complainant's store and business.
Oliver Wendell Holmes, when an associate justice of the Massachusetts Supreme Judicial Court, declared: "So, although the plaintiff has no copyright on the dictionary, or any part of it, he can exclude a defendant from a part of *Page 485 
the free field of the English language, even from the mere use of generic words, unqualified and unexplained, when they would mislead the plaintiff's customers to another shop." AmericanWaltham Watch Co. v. United States Watch Co., 173 Mass. 85;73 Am. St. Rep. 263; 53 N.E. Rep. 141; 43 L.R.A. 826.
A leading case in New Jersey affirming the power and the duty of this court to enjoin unfair competition through the use of a purely descriptive word to which word complainant had given a secondary meaning, is Rubber, c., Co. v. Rubber-Bound BrushCo., supra. Our Court of Errors and Appeals affirmed the decree below for the reasons given by Vice-Chancellor Howell. The Vice-Chancellor said (at p. 425) of the state report: "* * * where a descriptive word has been before the public so long and to such an extent as that it would be unjust for anyone to simulate it, and thus enable his goods to pass off as the goods of another, equity, which looks at the substance and not the mere form of things, will prevent the use of such words and give the complainant relief by way of injunction." The Vice-Chancellor then advised a decree enjoining the defendant from using the word "Rubber-Vulc" to designate its brushes set in rubber and the word "Rubber-Bound" in its corporate name; complainant had, for many years, used the words "Hard Rubberset," "Rubber-set," "Hard Rubberset and Bound," to distinguish its special variety of manufactured brushes.
Trade names have likewise been protected by this court, although they consisted, in whole or in part, of geographical, generic or descriptive words or the name of an individual. For instance, in Polackoff v. Sunkin, supra, the use of the name "New Jersey Malt Supply" by defendant in competition with complainant's established business and trade name of "New Jersey Malt Products Co." was enjoined. Our Court of Errors and Appeals, in its decision, declared: "When a trade name has acquired significance in the mind of the public who understand it as a designation or symbol applying to one's business, equity will relieve against the subsequent use by another of a name so similar as to confuse and mislead the public, to the first user's injury." *Page 486 
"Neither actual confusion nor actual fraudulent intent need be shown where the necessary and probable tendency of the defendant's conduct is to deceive the public and pass off his goods or business as and for that of the complainant." "The test is whether the use by the defendant of the words in dispute is likely to deceive ordinary purchasers buying with such care as would usually be exercised in such transactions." "A nice discrimination is not expected from the ordinary purchaser." "Similarity, not necessarily identity, of names is recognized as a basis for relief." Hilton v. Hilton, supra.
Even if the defendant in the instant case was innocent of artifice in having the words "Juvenile Shop" painted upon its show windows, its insistence on the continued employment of words which have been shown to be objectionable, after notice of objection and a request to desist from their use, and when the employment of those particular words were unnecessary to the prosecution of defendant's business on an honest basis, would warrant relief in this cause. VanHouten v. Hooten Cocoa Chocolate Co. (United States District Court of New Jersey),130 Fed. Rep. 600; Eureka Fire Hose Co. v. EurekaManufacturing Co., supra.
The evidence in this case convinces me that the words "Juvenile Shop" displayed by the defendant upon its store windows is so similar to complainant's long established trade name as to create a false impression in the minds of ordinary individuals exercising the precaution usually exercised in situations such as has been shown to here exist. I am also convinced by the evidence, and I must find, that the act of the defendant in displaying those words upon the show windows of its store a short time after the complainant had moved her old established business from a store almost directly opposite that of the defendant, and the conduct of the defendant's store manager and its sales girls to which I have hereinbefore adverted, were intended to entice any customers of the complainant who might be confused at finding her old store vacated into the store of the defendant, to further confuse them by giving them indefinite information as to the location of complainant's new store, and to sell *Page 487 
those customers defendant's junior wear. Complainant's use of her trade name for many years prior to the use of the two distinguishing and identifying words thereof by the defendant should be protected by this court. I shall advise that defendant be restrained from using complainant's trade name or the words "Juvenile Shop" in connection with its store and business.