ROBERT H. INGERSOLL & BROTHER

*v.*

HAHNE & COMPANY.

[Decided August 14th, 1917.]

1. Decisions of the supreme court of the United States as to the validity of contracts which may destroy competition are not binding on the state court unless the contract involves an article of interstate commerce.

2. The act of March 16th, 1916 (*P. L. 1916 p. 235*), is not in violation of the state or federal constitutions, nor invalid, as casting any burden on interstate commerce.

3. Contracts designed to prevent price cutting of standard articles, well known to the public, not the subject of monopoly and not necessaries of life, are not opposed to public policy.

4. On demurrer, the averments of a bill are to be treated as true.

On bill. On motion for preliminary injunction. On motion to strike out the bill.

*Mr. George L. Record,* for the complainant.

*Messrs. Stallman, Hoover & Peck (Mr. Stallman* and *Mr. Hoover),* for the defendant.

LANE, V. C.

The bill discloses the following facts: The complainant is a manufacturer of watches, sold under the Ingersoll name, in conjunction with certain trade names, such as "Yankee Watch," the "Dollar Watch," the "Eclipse Watch" and "Junior Watch;" the "Yankee Watch" is advertised throughout the country to be sold to the consumer at $1.35; the only way the watches can be sold for this low price is to manufacture them in immense quantities, and the only way to produce customers upon a large scale is by extensive advertising; the name of Ingersoll, and the reputation of the firm for fair dealing and reliable products, are nation wide, and it is absolutely necessary as a part of the advertising and building up of the business that a definite fixed price should form a part of the advertising for each of the products; all the Ingersoll watches are sold subject to a notice, a copy of which is as follows:

### "NOTICE.

"The use of our name, trade-mark, guarantee, reputation, good will and selling helps is licensed to the dealer for the sole purpose of selling or offering, advertising or displaying for sale this watch, provided this watch is not sold, offered, advertised or displayed for sale with or as any donation, discount, rebate, premium or bonus, or to any wholesale or retail dealer at rates different from those specified in our schedules, or at any other retail price than $1.35 without first removing this notice and our name, trade-mark and guarantee, and returning to us our selling helps and refraining from the use of our name, trade-mark, guarantee, reputation, good will and selling helps, and provided the dealer shall, upon our written request (unless he shall have previously sold it),

resell to us this watch, if then merchantable, at the rate specified in our schedules for the quantity in which he purchased, or, if then damaged, at such rate as shall then be agreed upon.

"Any violation of any of the above conditions depreciates our name, trade-mark, reputation and good will, and will act as a revocation of this license. Any use of our name, trade-mark, guarantee, reputation, good will or selling helps aids the dealer in selling this watch and will act as an acceptance of the above conditions. The dealer may sell or otherwise dispose of this watch as he pleases after first removing this notice and our name, trade-mark and guarantee, and returning to us our selling helps, and refraining from the use of our name, trade-mark, guarantee, reputation, good will and selling helps, but he has no right to use any of them in violation of the above conditions or to do anything to depreciate their value. Any dealer who violates any of the above conditions will be liable to suit for damages and an injunction.

"Upon written request of any dealer observing the above conditions, we agree (1) to repurchase from him this watch, if then merchantable, at the rate specified in our schedules for the quantity in which he purchased, or, if then damaged, at such rate as shall then be agreed upon; or (2) to leave him free, after first removing this notice and our name, trade-mark and guarantee, to sell or otherwise dispose of this watch without regard to the above conditions. "ROBT. H. INGERSOLL & BRO."

The defendant inserted in the "Newark News," a newspaper published in Newark, an advertisement in the following form:

> $1.35 Ingersoll
> Watches
> $1.00
> Nickel only; every one new
> with the usual Ingersoll
> guaranty.

This advertisement appeared on April 20th, 1917, and the defendant sold Ingersoll watches for the sum of one dollar; such sales were made in the regular Ingersoll boxes, which carried the notice heretofore mentioned; defendant advertised and declared its intention to again resort to such practice; it is only possible for complainant to manufacture and sell the large output it does by widespread advertisement, and in such advertisements the fact that the watches are for sale at the low and fixed price of $1.35 and the word "Ingersoll" are essential features; there is no profit in the sale by retailers of the

watches at a dollar; the direct effect of the acts of defendant is that other dealers in the neighborhood cannot market, at the rate of $1.35, the watches which are manufactured by the complainant; the public is induced to believe that the watches are not worth $1.35, inasmuch as they are being sold by defendant for a dollar; the other dealers in the locality will discontinue the sale of the Ingersoll watches; the business of the complainant will be disorganized, and, eventually, ruined; the defendant has no idea of marketing any considerable number of watches at the price of a dollar, but uses this cut rate and the Ingersoll name as bait, at irregular intervals, to get people into its store depending upon those attracted by the low rate of the Ingersoll watch making purchases of other goods sold by defendant; for its own purposes the defendant makes use not only of the article manufactured by the complainant, but also of its trade name and reputation and guarantee for its, the defendant's, ulterior purposes to the injury of the complainant.

The complainant relies upon the provisions of the statute (chapter 107 of the laws of 1916), which provides as follows:

"It shall be unlawful for any merchant, firm or corporation to appropriate for his or their own use a name, brand, trade-mark, reputation or good will of any maker in whose product said merchant, firm or corporation deals, or to discriminate against the same by depreciating the value of such products in the public mind, or by misrepresentation as to value or quality, or by price inducement, or by unfair discrimination between buyers, or in any other manner whatsoever, except in case where said goods do not carry any notice prohibiting such practice, and excepting in case of a receiver's sale, or a sale by a concern going out of business."

And also complainant further relies upon its right to relief at common law.

There is no question but that the notice prescribed by the statute was affixed to the goods in question. The defendant moves to strike out the bill upon several grounds, raising several questions, only two of which I deem it necessary to consider.

*First.* Whether the statute is in any respect contrary to the constitutional provisions of the state or of the United States.

15

*Second.* Whether the watches sold are the subject of interstate commerce to such an extent as that the statute cannot be held to apply.

On the argument there was, and in counsels' brief there is, a long discussion as to whether the contract against price cutting, evidenced by the notice, is contrary to public policy, and defendant relies upon cases in the supreme court of the United States as follows: *Dr. Miles Medical Co.* v. *John D. Parks & Sons Co., 220 U. S. 373; Bauer* v. *O'Donnell; 229 U. S. 1; Straus* v. *Victor Talking Machine Co.,* decided April 9th, 1917; *Motion Picture Patents Co.* v. *Universal Film Co.,* decided April 9th, 1917; *Bobbs Merrill Co.* v. *Straus, 210 U. S. 339; 52 L. Ed. 1086.*

I am now considering the public policy of the State of New Jersey as distinguished from any public policy of the United States. Unless the article is the subject of interstate commerce, I am not bound by the opinions of the supreme court of the United States. They are entitled to great weight and careful consideration, but it must not be overlooked that the effect of the case of *Motion Picture Patents Co.* v. *Universal Film Co.,* decided April 9th, 1917, is a complete reversal of *Henry* v. *Dick, 224 U. S. 1.* To consider in detail the reasoning of the court in the very numerous cases which have been decided bearing upon this question would unduly extend this opinion. Suffice it to say, that after careful consideration, I have come to the conclusion that upon the general proposition, I agree with the dissenting opinion of Mr. Justice Holmes in *Dr. Miles Medical Co.* v. *John D. Parks & Sons Co., 220 U. S.* (at *p. 411*). He said: "I think that, at least, it is safe to say that the most enlightened judicial policy is to let people manage their own business in their own way, unless the ground for interference is very clear. * * * I think we greatly exaggerate the value and importance to the public of competition in the production or distribution of an article (here it is only distribution), as fixing a fair price. * * * There may be necessaries that sooner or later must be dealt with like short rations in a shipwreck, but they are not Dr. Miles' medicines. * * * We must assume its retail price to be reasonable, for it is so alleged and the case is here on

demurrer; so I see nothing to warrant my assuming that the public will not be served best by the company being allowed to carry out its plan. I cannot believe that in the long run the public will profit by this court permitting knaves to cut reasonable prices for some ulterior purpose of their own and thus to impair, if not to destroy, the production and sale of articles which it is assumed to be desirable that the public should be able to get."

I agree also with the remarks of the supreme court of Washington in *Fisher Flouring Mills Co.* v. *C. A. Swanson,* *76 Wash. 649; 137 Pac. Rep. 144.* There the court says: "Finally, it seems to us an economic fallacy to assume that the competition, which in the absence of monopoly benefits the public, is competition between rival retailers. The true competition is between rival articles, a competition in excellence, which can never be maintained if, through perfidy of the retailer who cuts prices for his own ulterior purposes, the manufacturer is forced to compete in prices with goods of his own production, while the retailer recoups his losses on the cut price by the sale of other articles at, or above, their reasonable price. It is a fallacy to assume that the price-cutter pockets the loss. The public makes it up on other purchases. The manufacturer alone is injured, except as the public is also injured through the manufacturer's inability, in the face of cut prices, to maintain the excellence of his product. Fixing the price on all brands of high-grade flour is a very different thing from fixing the price on one brand of high-grade flour. The one means destruction of all competition and of all incentive to increased excellence. The other means heightened competition and intensified incentive to increased excellence. It will not do to say that the manufacturer has not interests to protect by contract in the goods after he has sold them. They are personally identified and morally guaranteed by his mark and his advertisement."

I could not use words which would better fit the situation in the case at bar than these. Complainant has no monopoly. Its goods are not manufactured under patents. It is constantly in competition with manufacturers of cheap watches. Not only is it morally bound as a result of its advertising to guaranty its

product, but it, in fact, guarantees it in writing. The defendant makes use of the name, reputation and guaranty of complainant for its own ulterior purpose and appropriates to itself the effect of the extensive advertising upon which the complainant depends, for defendant's own profit in violation of the contract expressed in the notice, and with no desire to benefit the public. A retailer does not sell a standard article at a loss for eleemosynary purposes.

It is a legislative function to establish public policy, and the public policy of this state has been, I think, with respect to the matter in question, settled by the statute hereinbefore referred to. I do not find that statute repugnant to the constitution either of the United States or of this state. There was no obligation upon Hahne & Company to purchase the watches in question, nor was there any obligation upon the complainant to manufacture and sell them. If Hahne & Company chose to purchase the watches with the notice attached, of which I must presume it had notice at the time of purchase, there is no injury done the defendant by compelling it to observe the provisions of the notice. As Mr. Justice Holmes said in the *Dr. Miles Medical Co. Case:* "I think that, at least, it is safe to say that the most enlightened judicial policy is to let people manage their own business in their own way, unless the ground for interference is very clear."

The case is before me as if upon demurrer, and I must assume that the statements of the bill that the effect of the acts of the defendant will be the destruction of complainant's business are true. The contract authorized by the statute is admitted; its breach is admitted; the effect of its breach must be considered as above. Can it be that there is no remedy? I do not find that any public benefit will be subserved by refusing to enforce the provisions of the statute.

The remaining question to determine is whether or not the restriction upon the sale of the watches is such an interference with interstate commerce as to prevent its enforcement. The watches were manufactured in New York; were sold to a jobber in New York, and by the jobber sold to a retailer in New Jersey for ultimate distribution to the public. The statute is designed

to promote good morals in business. It is an exercise of the police power of the state. That its purpose is within the legislative province, I think admits of no question. It does not operate to interfere with the trade or exchange of articles between this and other states, but rather touches upon the duties of citizens of this state to citizens of this and other states. I think that the effect of ignoring the restriction would tend to restrain interstate commerce by reducing its volume, and that the effect of enforcement of the restriction will tend to increase the volume of interstate commerce. If the Oleomargarine and Liquor laws can be maintained, and they have been (*Waterbury* v. *Newton, 50 N. J. Law 535*), I think there is no objection to an act of the nature under discussion. The result is that the motion to dismiss the bill will be denied and the restraint continued until final hearing.