ROBERT H. INGERSOLL & BROTHER

*v.*

HAHNE & COMPANY.

[Decided August 24th, 1918.]

1. The practice of a manufacturer who makes and sells an article not the subject of monopoly, but instead subject to keen competition, the price of which has been standardized through extensive and expensive advertising, of affixing a notice under the terms of which purchasers are forbidden to resell at less than the standard price without removing the manufacturer's marks and guarantee, is not offensive to public policy or the Sherman or Clayton acts.

2. Where the restraint is not upon the resale of the article but upon the use of the manufacturer's trade name and good-will, it is not within the reasoning of the line of cases in the supreme court of the United States, the last of which is *Boston Stores Co.* v. *American Graphophone Co.* (*United States Supreme Court*), Advance Opinion, April 1st, 1918, page 354.

3. A retailer who buys the article from a jobber with knowledge of the conditions imposed upon the resale is bound by such conditions.

4. Chapter 107 of the laws of 1916 is not offensive to any provisions of the constitution either of the United States or of this state.

5. Such act was a proper exercise of the police power of the state and properly applies to the use of a trade name or good-will, although such trade name and good-will may be identified with articles which prior to their coming to this state have been the subject-matter of interstate commerce.

6. When a retailer purchases articles through a jobber in New York, which articles have become known to the public generally through extensive advertising as standard priced, with knowledge that the articles are sold under conditions that they are not to be resold at less than the standard price without removing the manufacturer's trade name and guarantee, with the preconceived purpose of offering them to the public in this state at a price less than standard, so that the public may believe that all the goods in the store are similarly low priced, whereas in fact they are not, he will be enjoined from selling at less than the standard price without removing the manufacturer's trade marks and guarantee.

7. The right to relief rests not only upon the statute, chapter 107, laws of 1916, but upon common law principles.

On bill, &c.

*Mr. George L. Record* and *Mr. Gilbert H. Montague* (of the New York bar), for the complainant.

*Mr. Maximilian M. Stallman* and *Mr. Jeremiah F. Hoover,* for the defendant.

LANE, V. C.

This is a final hearing upon a bill filed to restrain the defendant from cutting prices on watches manufactured by complainant and sold at retail by defendant. The bill is set out in detail in my conclusions on the motion to strike it out. The proofs now before me demonstrate that the allegations of the bill are well founded; that complainant has built up a large business as a manufacturer of watches sold under its name in conjunction with certain trade names, such as Yankee Watch, the Dollar Watch, &c.; that at the time the bill was filed the Yankee Watch had been advertised by complainant throughout the country to be sold to the consumer at $1.35; that complainant has spent large sums of money in creating a good-will throughout the country for its product; that it is absolutely necessary as a part of the advertising and building up of the business that a definite fixed price should form a part of the advertising for each of the products; that all of the watches are sold subject to notice set forth in full in the conclusions on motion to strike out the bill, which provides substantially that the watches must not be resold at less than the fixed retail price, without first removing the notice, the name, the trade mark and guarantee; that the dealer might sell or otherwise dispose of the watches as he pleased after first removing the notices, &c.; that upon the written request of any dealer complainant would repurchase the watches if then merchantable at the rate specified in its schedule for the quantity in which he purchased, or if then damaged at such rate as should then be agreed upon, or complainant agreed to leave the dealer free after first removing the notice, &c., to sell or otherwise dispose of the watches without regard to the conditions; that unless complainant is permitted to sell watches

under such conditions its business cannot be successfully carried on; that it must either suspend business or organize throughout the country a selling force of its own, in which event the prices of the watches would be necessarily greatly increased; that the complainant has no monopoly, nor does it depend upon patent rights; that there are many manufacturers of watches of similar nature which are in direct competition to those manufactured by complainant; that complainant offers to manufacture watches similar to those manufactured by it and having its trade name affixed, without any distinguishing marks, which watches may be sold by purchasers without condition; that defendant having knowledge of the conditions purchased a number of watches manufactured by complainant from a jobber in New York with the preconceived purpose of placing them on sale at its retail department store in Newark at a cut price, about cost, so that the public might be induced to believe that, by reason of the offer of this standard priced article, known to the public, at a cut price, all the goods offered in the store were similarly low priced; that as a matter of fact all the goods offered in the store were not similarly low priced, the defendant intending to make up on sales of other articles higher priced the losses which it would sustain by a sale of watches; that the effect of the act of defendant is to defraud the public.

The affixing of the notice is justified under the provisions of a statute of this state, laws of 1916, chapter 107, which provides that it shall be unlawful for any merchant, firm or corporation to appropriate for his or their own use a name, brand, trade mark, reputation or good-will of any maker in whose product such merchant, firm or corporation deals, or to discriminate against the same by depreciating the value of such product in the public mind, or by misrepresentation as to value or quality, or by price inducement or by unfair discrimination to their buyers or in any other manner whatsoever, except in case where said goods do not carry any notice prohibiting such practice, and excepting in case of a receiver's sale or a sale of a concern going out of business.

It is insisted by defendant that the contract against price-cutting evidenced by the notice is contrary to public policy and

to the Sherman and Clayton acts, and defendant relies upon the cases in the supreme court of the United States, the last of which is *Boston Stores of Chicago* v. *American Graphophone Co. et al.,* United States supreme court, Advance Opinion, April 1st, 1918, page 354.

On the motion to strike out the bill (*88 N. J. Eq. 222*), I contented myself with holding that I was dealing with the public policy of this state and that the decisions in the supreme court of the United States were not controlling, as the subject-matter of the legislation was within the police power of the state. Since the final hearing I have re-examined the cases in the supreme court of the United States in the light of counsels' briefs and have come to the conclusion that the restrictions upon the resale of the article would be valid at common law and their validity is not affected by either the Sherman or Clayton acts and that the supreme court of the United States has not yet dealt with the precise situation presented here. As Mr. Justice Hughes said, in *Dr. Miles Medical Co.* v. *John D. Park & Sons Co., 220 U. S. 373* (at *p. 406*) ; *55 L. Ed. 518:* "With respect to contracts in restraint of trade, the earlier doctrine of the common law has been substantially modified in adaptation to modern conditions. But the public interest is still the first consideration. To sustain the restraint it must be found to be reasonable both with respect to the public and to the parties, and that it is limited to what is fairly necessary in the circumstances of the particular case, for the protection of the covenantee. Otherwise restraints of trade are void as against public policy."

If the distinguished justice meant that all restraints were void at common law, I think he was mistaken, but be that as it may, it is now well settled that restraints which are reasonable in the absence of statute are valid; it is also well recognized that a person has a property interest in his trade name and good-will, and will, even in the absence of statute, be protected against injury to that trade name and good-will. This right has in this state been as above indicated recognized by statute. Since the opinion of the supreme court in the *Standard Oil Co.* v. *United States, 221 U. S. 1,* it has been recognized that the Sherman and Clayton acts must be construed in the light of reason. To

say that congress intended to prohibit an act which had the effect of stimulating interstate commerce and stimulating competition rather than putting a restraint upon either is, I think, to state an absurdity. The proofs before me demonstrate that if defendant and others are permitted to pursue their practice of price-cutting the business of complainant will be ruined and thereby the volume of interstate trade be reduced, or a method of distribution will have to be adopted which will greatly increase the price to the consumer, which will necessarily result in reducing the volume of interstate traffic; that in either event competition will be effectively reduced. And to what useful purpose? So that retailers may make use of the trade name and good-will established after extensive advertising, to the extent that the public have associated with the article a standard of value, to fool the public into a belief that because a standard priced article can be sold at a cut price all other goods sold are similarly low priced—in other words, to defraud the public. It is no answer to say that full value is given by the retailer for each article sold. If such be the fact, a person is defrauded if he buys an article at full price for which he has no immediate need because he is induced to believe it a bargain and thereby deprive himself of the use of the purchase price for other purposes for which he might have used it if he did not think he was getting a bargain.

In the cases which have gone to the supreme court of the United States there have been involved questions of patent or copyright law not here present. In those cases in which the right to fix a resale price has been under consideration, the prohibition against the resale has been against the resale of the article itself. The name or trade mark or what not has been so much an integral part of the article as that a resale of the article without reference to the trade mark or trade name would be practically impossible. In the case at bar the prohibition is not against the resale of the article nor is it impracticable to resell the article without reference to the trade name. Indeed, complainant offers to manufacture watches similar to those marked with its trade name without the trade name. Complainant does not seek to retain any right in the article itself; it merely seeks to restrain the use of its trade name and good-will, except under conditions

fixed by it. It may permit the purchaser of the article to use its trade name and good-will under such conditions as it sees fit. It has an interest, in addition to that of mere protection to its trade name and good-will, for it guarantees the article sold, and scrupulously performs its guarantee, maintaining a large and expensive repair department for this purpose.

It seems to me that there is a clear distinction between those cases in which the nature of the restraint is such as necessarily to affect the resale of the article itself and the case at bar where the nature of the restraint is not such.

I find the restraint reasonable both with respect to the public and to the parties, and that it is limited to what is fairly necessary in the circumstances of the particular case for the protection of the covenantee; that it does not offend either the Sherman or the Clayton act; that to permit defendant to avoid the effect of the notice would be to permit an act which would tend to restrain interstate trade if the subject be one of interstate commerce and to stifle competition and to defraud the public. I reiterate my agreement with the remarks of the supreme court of Washington in *Fisher Flour Mill Co.* v. *Swanson, 76 Wash. 649; 137 Pac. Rep. 144.*

In addition to what I said in my conclusions on the motion to strike out the bill with respect to the validity of the legislation on which the notice is based as an exercise of the police powers of the state, I refer to the so-called *Child Labor Cases. Hammer* v. *Dagenhart,* supreme court of the United States, Advance Opinions, July 1st, 1918 (at *p. 660*). In that case the supreme court held that congress might not under its power to regulate interstate commerce legislate with respect to child labor, notwithstanding the fact that the permission of the use of child labor in one state might lead to unfair competition to manufacturers in other states, and might have the effect of reducing the volume of interstate commerce, holding that the matter of regulation was one for the states. Similarly, I think it is clear that a state may, in the exercise of its police power, prevent fraud upon its citizens by the use of the trade name or good-will of another, even though that trade name and good-will is attached

to an article which prior to its being brought into this state for distribution has been a subject of interstate commerce.

In the case at bar it is proper to say that we are not left to conjecture as to the purpose of the defendant or as to the effect of permitting defendant to continue its practice; both are plainly demonstrated by the record.

On any appeal my conclusions on the motion to strike out the bill (*88 N. J. Eq. 222*) are to be considered as a part of this opinion and printed therewith. I will advise a decree in accordance with this opinion. Settle decree on three days' notice.

Since writing the above I have come across the case of *Reed v. Saslaff (New Jersey Supreme Court), 78 N. J. Law 158.* In that case the supreme court held valid a contract made between certain rolling chair proprietors in Atlantic City to maintain a fixed schedule of rates for service where it appeared that the schedule rates were exactly the same as the maximum rates fixed for such service by the ordinance of the city, and that the rates were reasonable, and it did not appear that the parties to the agreement had a monopoly of the business in that community.

I think that the case has a distinct bearing upon that at bar. The fact that in the *Reed Case,* the maximum rates were fixed by ordinance could have only entered into the consideration of the court as indicating that the rates fixed by the contract were not excessive.

I think that the supreme court held generally that an agreement to maintain rates where the rates are reasonable, and it does not appear that the parties to the agreement have a monopoly, is valid. And I think this also applies to prices.