DOUBLEDAY, DORAN & COMPANY, INC., and Another, Plaintiffs, *v.* R. H. MACY & Co., INC., Defendant.*

Supreme Court, Special Term, Westchester County, November 18, 1935.

*Greenbaum, Wolff & Ernst,* for the plaintiffs.

*Leon Lauterstein,* for the defendant.

CLOSE, J. Both plaintiffs and the defendant have moved for judgment on the pleadings. The question raised is the constitutionality of section 2 of chapter 976 of the Laws 1935, known as the Fair Trade Act of New York. The act in question reads as follows:

" Section 1. Subdivision 1. No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade mark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the state of New York by reason of any of the following provisions which may be contained in such contract:

" (a) That the buyer will not resell such commodity except at the price stipulated by the vendor.

" (b) That the vendee or producer require in delivery to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee.

" 2. Such provisions in any contract shall be deemed to contain or imply conditions that such commodity may be resold without reference to such agreement in the following cases:

" (a) In closing out the owner's stock for the purpose of discontinuing delivering any such commodity.

" (b) When the goods are damaged or deteriorated in quality, and notice is given to the public thereof.

" (c) By any officer acting under the orders of any court.

" § 2. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section one of this act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.

" § 3. This act shall not apply to any contract or agreement between producers or between wholesalers or between retailers as to sale or resale prices.

" § 4. The following terms, as used in this act, are hereby defined as follows: ' producer ' means grower, baker, maker, manufacturer or publisher. ' Commodity ' means any subject of commerce.

" § 5. If any provision of this act is declared unconstitutional it is the intent of the legislature that the remaining portions thereof shall not be affected but that such remaining portions remain in full force and effect.

" § 6. This act shall take effect immediately."

To summarize: This statute authorizes the producer of branded articles which are in fair and open competition with commodities of the same general class produced by others to include in sales contracts a provision that the buyer will not resell the article except at a price fixed by the seller. It is further provided by the section under attack that any one willfully and knowingly selling any such commodity at less than the price stipulated in such a contract must respond in damages to any party injured, though the party so selling at the lower price is not a party to any contract.

The plaintiffs allege that Doubleday, Doran & Company, Inc. (hereinafter referred to as the publisher), is engaged in publishing certain books bearing its trade name. The plaintiff Doubleday, Doran Bookshops, Inc. (hereinafter referred to as the retailer), sells such books in competition with the defendant. That the publisher and the retailer entered into a contract pursuant to chapter 976 of the Laws of 1935 to the effect that the retailer will not sell the books except at a price stipulated by the publisher.

It is then alleged in substance that with the knowledge of such contract the defendant is selling and offering for sale certain books covered by such contract at a substantially lower price than is fixed in the contract between the publisher and the retailer. The complaint contains other appropriate allegations to bring the action squarely within the statute referred to.

The defendant admits the allegations of the complaint, and as a separate and complete defense alleges that it has conducted a department store for many years, selling for cash only, and enjoys a good will resulting in a sales volume of many millions of dollars.

per annum. That the retailer plaintiff does not sell for cash, but extends credit with resulting increase in overhead, and that section 2 of chapter 976 of the Laws of 1935 is violative of the Fourteenth Amendment of the Constitution of the United States in that it deprives the defendant of liberty and property without due process of law. That said law also violates section 6 of article 1 of the Constitution of the State of New York upon the ground that it denies the defendant the equal protection of the law as guaranteed by the Fourteenth Amendment of the Federal Constitution. That the act is an unconstitutional delegation of legislative power to private persons in violation of section 1 of article 3 of the Constitution of the State of New York.

At the outset it may be stated that if the act is constitutional, its economic wisdom is not for this court to decide. (*People* v. *Nebbia*, 262 N. Y. 259, at p. 271; *Messersmith* v. *American Fidelity Co.*, 232 id. 161, 163, 164.) Nor is the validity of that portion of the act providing for contracts fixing resale prices attacked. It is conceded that the Legislature has such power. (*Marsich* v. *Eastman Kodak Co.*, 244 App. Div. 295; *Park & Sons Co.* v. *National Druggists' Assn.*, 175 N. Y. 1; *United States* v. *Des Moines Nav. & R. Co.*, 142 U. S. 510, 544; 12 S. Ct. 308; 35 L. Ed. 1099.) Federal cases declaring such contracts invalid seem to be based upon the fact that there was no act of the State Legislature authorizing such contract. (See dissenting opinion of Mr. Justice HOLMES in *Dr. Miles Medical Co.* v. *Park & Sons Co.*, 220 U. S. 373, at p. 411; 31 S. Ct. 376, at p. 385; 55 L. Ed. 502; *Boston Store* v. *American Graphophone Co.*, 246 U. S. 8, 26; 38 S. Ct. 257; 62 L. Ed. 551.)

It has been expressly held that a producer may select only such customers as meet his conditions as to price policy. (*United States* v. *Colgate & Co.*, 250 U. S. 300; 39 S. Ct. 465; 63 L. Ed. 992.) But when the State has attempted by legislation to fix the selling price of ordinary commodities and services, the acts have uniformly been held unconstitutional as beyond the legislative power. (For instance, see *Wolff Co.* v. *Industrial Court*, 262 U. S. 522; 43 S. Ct. 630; 67 L. Ed. 1103, wages; *Tyson & Brother* v. *Banton*, 273 U. S. 418; 47 S. Ct. 426; 71 L. Ed. 718, theatre tickets; *Williams* v. *Standard Oil Co.*, 278 U. S. 235; 49 S. Ct. 115; 73 L. Ed. 287, gasoline; *People* v. *Gillson*, 109 N. Y. 389, coffee.) That the question is now settled is demonstrated by the following excerpt from the opinion in *Ribnik* v. *McBride* (277 U. S. 350, at p. 357; 48 S. Ct. 545, 546; 72 L. Ed. 913): " Under the decisions of this Court it is no longer fairly open to question that, at least in the absence of a grave emergency  *  *  *  the fixing of prices for

food or clothing, of house rental or of wages to be paid, whether minimum or maximum, is beyond the legislative power."

In *People* v. *Gillson* (109 N. Y. 389) a statute designed to prevent price cutting in the sale of foodstuffs by prohibiting the giving of premiums or gifts in connection with the sale was held unconstitutional upon the grounds urged here. The legislation was sought to be upheld by the same arguments urged in support of the act in question. It seems to me that the language of Mr. Justice PECKHAM, speaking for a unanimous court, is peculiarly apropos:

" It is quite clear that some or all of these fundamental and valuable rights are invaded, weakened, limited or destroyed by the legislation under consideration. It is evidently of that kind which has been so frequent of late, a kind which is meant to protect some class in the community against the fair, free and full competition of some other class, the members of the former class thinking it impossible to hold their own against such competition, and therefore flying to the legislature to secure some enactment which shall operate favorably to them or unfavorably to their competitors in the commercial, agricultural, manufacturing or producing fields.

" By the provisions of this act a man owning articles of food which he wishes to sell or dispose of is limited in his powers of sale or disposition. A liberty to adopt or follow for a livelihood a lawful industrial pursuit, and in a manner not injurious to the community, is certainly infringed upon, limited, perhaps weakened or destroyed by such legislation.

" It is certainly lawful to sell (as in this instance) coffee. It is an article of food and is now almost one of the necessaries of life to a large number of people. A person engaged as a retailer of coffee might very well think that he could greatly enlarge the amount of his trade by doing precisely what was done by the defendant in this case, and that while his profits on the same amount of coffee sold would be smaller than if he gave no present, yet by the growth of his trade his income at the end of the year would be more than by the old method.

" This statute, if valid, steps in to prevent his adopting such a course to procure trade, and from it to secure an income and livelihood for himself and family. He is thus restrained in the free enjoyment of his faculties, which he ought to have the right and liberty to use in the way of creating or adopting plans for the increase and growth of his trade, business or occupation, unless such restraint is necessary for the common welfare.

" This law interferes with the free sale of food, for the condition is imposed that no one shall sell food and at the same time, and as part of the transaction, give away any other thing. It is not

material if by reason of the prohibition the owner's sales of food are greatly cut down and his ability to support his family thereby perhaps largely decreased. If the law is valid, the fact of its existence is a complete answer to the complaints of the owner of food, that his liberty to sell his property and his chance to make a livelihood are very greatly impaired." (109 N. Y. 389, *supra*, pp. 399, 400.)

It is claimed that while attempts at "horizontal price fixing," *i. e.*, agreements by groups and producers, wholesalers or retailers, to fix the sale or resale price of their collective products or commodities, may be illegal, "vertical price," meaning thereby the efforts of a single producer to fix and maintain the prices of his products by those who sell the ultimate consumer, is not.

A law may be devised to bring about this result, but the defects in this act are so seemingly patent that it must be declared invalid. The act does not even provide that the producer shall enter into similar agreements with each retailer. One might be favored over another and seemingly the less favored one would have a cause of action against the more favored retailer, though the latter would be living up to the letter of his contract with the producer.

Another defect is the attempt to give to private persons unlimited power over the property of others. Unless the courts are prepared to hold that by placing his brand upon a commodity, the producer retains a property right in that commodity until it reaches the hands of the consumer, so that he may fix its price at every stage of distribution, this statute must fall. That it is unconstitutional to place such power in the hands of private individuals seems to be plainly indicated by such authorities as *Seattle Trust Co.* v. *Roberge* (278 U. S. 116; 49 S. Ct. 50; 73 L. Ed. 210); *Yick Wo* v. *Hopkins* (118 U. S. 356; 6 S. Ct. 1064; 30 L. Ed. 220); *Mayor, etc., of Baltimore* v. *Radecke* (49 Md. 217; 33 Am. Rep. 239).

I am not unmindful of the line of cases where price discrimination has been restrained where its purpose was to destroy competition of any regularly established dealer or to prevent competition of any person who in good faith intends to become such dealer (for an instance see *Central Lumber Co.* v. *South Dakota*, 226 U. S. 157; 33 S. Ct. 66; 57 L. Ed. 164), but such is not the case here. The use of so-called "loss-leaders" is to attract customers and is no more destructive of competitors than are other forms of advertising that attract public attention. Assume that the defendant sold the article at the same price as the retailer plaintiff and gave a gift, prize or premium with each article sold, the same result would be obtained.

I regret that I am unable to follow the reasoning of my learned colleague as expressed in *Cooper & Cooper* v. *Angert* (N. Y. L. J.

Nov. 2, 1935, p. 1655). As I read the authority cited by him, it falls short of sustaining the position of the plaintiff here.

My attention has been called to decisions in other jurisdictions of courts of original jurisdiction, holding somewhat similar statutes constitutional (*Ingersoll & Brother* v. *Hahne & Co.*, 88 N. J. Eq. 222; 101 A. 1030, and same case in 89 N. J. Eq. 332; 108 A. 128), but in view of the authoritative opinions of our own Court of Appeals, I am constrained not to follow the authority of a court in a foreign State.

Many writers on economic questions have long urged that legislative relief be granted against so-called price cutting, maintaining that it is an economic evil that should be eradicated. That may be so but my present opinion is that our fundamental law must be changed before such an act as this can be upheld. If our present organic law is to be held elastic enough to permit legislation such as this, it seems that so radical a departure from precedent might better be announced by the court of last resort.

Motion by the defendant for judgment on the pleadings is granted, and complaint is dismissed.