ADWON v. OKLAHOMA RETAIL
GROCERS ASS'N, Inc.

No. 34707.   Feb. 27, 1951.

228 P. 2d 376.

Carroll Samara, Oklahoma City, for plaintiff in error.

Miskovsky & Miskovsky, Oklahoma City, for defendant in error.

LUTTRELL, V.C.J. This action was brought by Oklahoma Retail Grocers Association, Inc., against Earnest Adwon, d/b/a Earnest Adwon Grocery, to enforce compliance by the defendant Adwon with the provisions of the Unfair Sales Act, S. L. 1949, p. 103, 15 O.S. Supp. 1949, §598.1-11.

Plaintiff's petition alleged that defendant on a certain date, in violation of the Unfair Sales Act, offered for sale and sold at retail for less than cost certain items of merchandise, and that unless enjoined and restrained defendant would continue to so violate the Unfair Sales Act. It was also alleged that the acts of defendant were done with the intent and purpose of impairing and preventing fair competition by diverting trade from his competitors, and that such sales constituted unfair competition and were injurious to the public welfare, and prayed for an injunction restraining defendant from further violations of the Act. Upon the filing of the petition the trial court issued a temporary restraining order and set the matter for hearing. Defendant demurred generally to the plaintiff's petition upon the ground that it did not state facts sufficient to entitle plaintiff to the relief sought, and also demurred on the ground that the Act was unconstitutional and void because it was indefinite and uncertain, and for the further reason that it violated certain sections of the State and Federal Constitutions. The trial court overruled the demurrer, and defendant elected to stand thereon and gave notice of appeal. The trial court on the same date granted plaintiff a temporary injunction and set the matter for trial on its merits. Defendant appeals.

In Englebrecht v. Day, 201 Okla. 585, 208 P. 2d 538, we held a prior Unfair Sales Act, enacted in 1941, unconstitutional for the reason that in section 3 of the Act, 15 O.S. 1941 §593, a sale at less than cost with the intent

*or effect* of injuring or preventing fair competition, etc., was violative of the State and Federal Constitutions in that it punished a sale for less than cost regardless of any wrongful intent. In the opinion we also pointed out that that part of the prior Act, providing that purchases made at prices which could not be justified by prevailing market conditions could not be used in determining the cost, had been held unconstitutional, giving as our reason for calling attention to this provision the fact that the Legislature might decide to amend and readopt the Act.

Subsequent to the handing down of this opinion, the Legislature, in 1949, adopted the present Act, eliminating the objectionable matter pointed out in the opinion in the above case.

Defendant attacks the present law on the ground that the policy of the Act is bad in that it is in conflict with freedom of enterprise. In his brief he quotes articles from the Yale Law Journal and from the Harvard Law Review in which the writers assert that instead of protecting the small merchants by preventing destructive competition, such laws in fact are injurious to small merchants and tend to destroy free competition. We are not impressed with this contention. In Herrin v. Arnold, 183 Okla. 392, 82 P. 2d 977, 119 A.L.R. 1471, we held that laws of this nature were enacted under the police power; that the Legislature was primarily the judge of the necessity of the enactment; that every possible presumption was in favor of its validity, and that although the court might hold views inconsistent with the wisdom of or necessity for the law, it would not annul the law unless the same was palpably in excess of legislative power. The statements made in this case were approved in Jack Lincoln Shops v. State Dry Cleaners Board, 192 Okla. 251, 135 P. 2d 332, and in Application of Richardson, 199 Okla. 406, 184 P. 2d 642. In the latter case we said:

"The Legislature is itself the judge of the conditions which warrant legislative enactments, and they are only to be set aside when they involve such palpable abuse of power and lack of reasonableness to accomplish a lawful end that they may be said to be merely arbitrary, capricious, and unreasonable, and hence irreconcilable with the conception of due process of law."

Defendant next contends that the Act is violative of the 5th and 14th Amendments to the Federal Constitution, and sections 2 and 7, art. 2, of the Constitution of the state, the due process clauses of the said Constitutions. In support of this argument he cites and relies upon Commonwealth of Pa. v. Zasloff, 338 Pa. 457, 13 Atl. 2d 67, 128 A.L.R. 1120, and State v. Packard-Bamberger & Co., 123 N. J. L. 180, 8 Atl. 2d 291. Examination of these cases, however, discloses that the laws which were declared unconstitutional in each case flatly prohibited the advertisement, offer for sale, or sale of any merchandise at less than cost. The acts involved in these cases contain no provision making the violator of the law liable only when his sales were made with wrongful intent, and are therefore not comparable to the provisions of our 1949 law, which makes such an intent an essential ingredient of the offense. This is repeatedly pointed out in both decisions last above referred to. Thus, in State v. Packard-Bamberger & Co., supra, the court said:

"In the case presently pending, there is no definition of wrongful intent or purpose to limit fair competition or to inflict injury upon anyone. Indeed, intent or motive or the existence of injury to anyone are not essential to punishment under this act. As above stated, guilt may obtain without knowledge of the violation of any of its provisions. A person might believe he was complying with the provisions of this act in all respects, and find himself guilty of its violation because he purchased goods at a price not justified by market conditions, of which he was unaware, or that he met the price of a competitor, believing such price to be a lawful one, when it was not a 'lawful price.' "

In each case the law was held unconstitutional for this reason.

Laws similar to our present Act have been generally held valid. See Note 128 A.L.R. p. 1127, and 162 A.L.R. p. 532. In the brief of defendant no specific provision of the law which deprives the defendant of any constitutional right is pointed out, nor does defendant assert that any specific provision of the Act makes it unconstitutional.

In State v. Langley, 53 Wyo. 332, 84 P. 2d 767, and in Wholesale Tobacco Dealers Bureau v. National Candy & Tobacco Co., 11 Cal. 2d 634, 82 P. 2d 3, the Supreme Courts of Wyoming and California in elaborate opinions upheld the validity of the respective Unfair Sales Act of their states. In these opinions, as in Englebrecht v. Day, supra, many of the decisions of the various states relating to similar enactments are analyzed and discussed, and therefrom it appears that in each instance where the law was held unconstitutional, it was because of the invalidity of some particular section thereof by reason either of indefiniteness or uncertainty, or by the failure of the law to make wrongful intent an essential ingredient of the offense.

Defendant asserts that the mere amendment of the Act by striking out the "or effect" phrase and the "prevailing market conditions" phrase, which we condemned in Englebrecht v. Day, supra, did not render it valid and constitutional, and urges that we "again search the entire record and transcript, and again strike down this dangerous legislation, which strikes at the very heart of free enterprise."

In Herrin v. Arnold, supra, Jack Lincoln Shops v. State Dry Cleaners Board, supra, and Application of Richardson, supra, we held that this court would indulge every possible presumption that an act of the Legislature was constitutional. In School Dist. No. 25 of Woods Co. v. Hodge, 199 Okla. 81, 183 P. 2d 575, we said:

"Where the constitutionality of an act of the Legislature is in question, all reasonable doubt will be resolved in favor of the questioned authority and the act will be declared constitutional unless it can be clearly demonstrated that the Legislature did not have the power or authority exercised or that its authority was exercised arbitrarily and capriciously, for instance as to classification or delegation of authority, to the prejudice of the rights of some of the citizens."

Numerous decisions announcing and upholding this statement or rule are cited in support thereof in that case.

In Pawnee County Excise Board v. Kurn, 187 Okla. 110, 101 P. 2d 614, we said:

" 'It is only where an act of the Legislature is clearly, palpably, and plainly inconsistent with the terms and provisions of the Constitution that the courts will interfere and declare such act invalid and void. Munroe v. McNeill, 122 Okla. 297, 255 P. 150; Protest of Downing, 164 Okla. 181, 23 P. 2d 173. The action of the lawmaking power must in all cases be upheld, unless its action is manifestly in contravention of the Constitution.' "

Examination of the 1949 Act does not disclose that it contains any provision held invalid or unconstitutional in the decisions cited and relied upon by defendant, or that any of its provisions are clearly, palpably, and plainly inconsistent with the provisions of our Constitution, or of the Constitution of the United States. We therefore indulge the presumption stated in School Dist. No. 25 of Woods Co. v. Hodge, supra, and hold the law valid as against the objections urged by defendant. The trial court did not err in overruling the demurrer.

Affirmed.

ARNOLD, C. J., and CORN, GIBSON, DAVISON, and HALLEY, JJ., concur. WELCH, JOHNSON, and O'-NEAL, JJ., dissent.

O'NEAL, J. (dissenting). I do not agree with the majority opinion. In my

judgment the Act of the Legislature of 1949, designated as the Unfair Sales Act, contravenes the Fourteenth Amendment to the Constitution of the United States, and likewise contravenes sections 2 and 7 of article 2 of the Constitution of the State of Oklahoma.

The defendant was charged with violating the Act in that he advertised for sale, offered for sale, and sold at retail certain articles of merchandise at less than cost plus several items to be added to the original cost, including a 6% markup, as provided in said Act, the articles so sold being:

"Crisco Shortening, three (3) pounds, at the price of 71c;"

"Popular brand cigarettes at 20c per package;"

"Folgers Coffee at 69c per pound;"

"Large size oxadol (sic) Soap Grains at 23c per package."

At this point attention is directed to the fact that the sale of cigarettes at prices below cost is regulated by House Bill No. 474, Title 15, chap. 14(a), S. L. 1949, effective May 31, 1949, known as the Unfair Cigarette and Tobacco Products Sales Act.

An unfair sales act was adopted in Oklahoma in 1941; 15 O. S. 1941 §§591-597, 1941 S. L., page 53.

In Englebrecht v. Day, 201 Okla. 585, 208 P. 2d 538, the trial court held said act unconstitutional solely upon the ground that said act made it a misdemeanor for a retailer or wholesaler to advertise, offer to sell, or sell any merchandise at less than cost as defined in the act, with the intent or effect of inducing the purchase of other merchandise, or of unfairly diverting trade from a competitor, or otherwise injuring a competitor, impairing and preventing fair competition, or injuring public welfare. The reason the trial court held the act unconstitutional was the inclusion of the words "or effect" immediately after the words "with the intent" in section 3 of the act (15 O.S.

1941 §593) so as to make it possible to prosecute a retail merchant criminally, or subject him to injunctive restraint where the effect of the act relied upon was to induce the purchase of other merchandise or unfairly divert trade from a competitor, etc., although there was no such intent on the part of the seller. On appeal, this court, in Englebrecht v. Day, supra, sustained the trial court in holding said act unconstitutional on the specific grounds stated by the trial court, and also held another provision in the act (subdivision E of section 2) invalid.

In 1949, effective May 18, 1949, the Legislature enacted an "Unfair Sales Act" substantially the same as the act of 1941, except that the provisions held invalid in Englebrecht v. Day, supra, were omitted. The Act provided that duly organized and existing trade associations, whether incorporated or not, are authorized to prosecute a suit or suits for injunctive relief and costs as the real party in interest for or on behalf of one or more of said associations' members, when violation of the act directly affects, or threatens to affect, or injure such member, or members, or where violation of the act threatens to impair fair competition, or otherwise affects such members.

Defendant in this case contends that the "Unfair Sales Act" of 1949, after elimination of the two objectionable provisions found and held unconstitutional in Englebrecht v. Day, supra, contravenes the Fifth Amendment and section 1 of the Fourteenth Amendment of the Constitution of the United States and contravenes sections 2 and 7, article 2 of the Constitution of the State of Oklahoma.

It has many times been said that:

"No common law right has been more firmly established or more treasured than the right of the individual to sell his goods or his services at whatever price he and the purchaser might agree upon." State v. Packard-Bamberger & Co., Inc., 16 N. J. Misc. 180, 2 A. 2d 599.

In the same case it is said:

"I think that, at least, it is safe to say that the most enlightened judicial policy is to let people manage their own business in their own way, unless the ground for interference is very clear; as for example, the milk industry. I believe we cannot too greatly exaggerate the value and importance to the public of fixing a fair price in competition."

In Williams v. Standard Oil Co., 278 U.S. 235, 73 L. Ed. 287, 60 A.L.R. 596, it is said:

"It is settled by recent decisions of this court that a State Legislature is without constitutional power to fix prices at which commodities may be sold, services rendered, or property used, unless the business or property involved is 'affected with a public interest.'"

And:

"Nothing is gained by reiterating the statement that the phrase is indefinite. By repeated decisions of this court, beginning with Munn v. Illinois, 94 U.S. 113, 24 L. Ed. 77, that phrase, however it may be characterized, has become the established test by which the legislative power to fix prices of commodities, use of property, or services must be measured."

As to "when is a business affected with the public interest," it is therein said:

"Affirmatively, it means that a business or property, in order to be affected with a public interest, must be such or be so employed as to justify the conclusion that it has been *devoted* to a public use and its use thereby in effect *granted* to the public."

And:

"Negatively, it does not mean that a business is affected with a public interest merely because it is large or because the public are warranted in having a feeling of concern in respect of its maintenance."

But in Nebbia v. New York, 291 U.S. 502, 78 L. Ed. 940, 89 A.L.R. 1469, the Supreme Court of the United States said:

"It is clear that there is no closed class or category of business affected with a public interest, and the function of courts in the application of the Fifth and Fourteenth Amendments is to determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discriminatory."

And the court had under consideration the power of the State of New York, through a control board created by the state, to fix the price at which fluid milk could be sold in that state. It was pointed out that the reasons for the enactment of the law were set forth in the first section of said act and, so far as material, were:

". . . that unhealthful, unfair, unjust, destructive, demoralizing and uneconomic trade practices exist in the production, sale and distribution of milk and milk products, whereby the dairy industry in the state and the constant supply of pure milk to inhabitants of the state are imperiled; these conditions are a menace to the public health, welfare and reasonable comfort; the production and distribution of milk is a paramount industry upon which the prosperity of the state in a great measure depends; existing economic conditions have largely destroyed the purchasing power of milk producers for industrial products, have broken down the orderly production and marketing of milk, and have seriously impaired the agricultural assets supporting the credit structure of the state and its local governmental subdivisions. The danger to public health and welfare consequent upon these conditions is declared to be immediate and to require public supervision and control of the industry to enforce proper standards of production, sanitation and marketing."

It thus appears that the sale of fluid milk to consumers was affected or clothed with the public interest, because the public health, the public welfare, and reasonable comfort were involved. The law still is that the power to fix prices does not exist in respect to merely private property, or business, except where the business, or the

property sold, has become affected with the public interest. Tyson & Bro. United Ticket Offices v. Banton, 273 U.S. 418, 71 L. Ed. 718. Williams v. Standard Oil Co., supra. In State v. Packard-Bamberger & Co., supra, it is said:

"Fixing the price on all goods is a very different thing from fixing the price on one kind of article. The one means destruction of all competition and of all incentive to increase excellence of the product; the other means heightened competition and intensified incentive to increase quality."

That is particularly true where the one kind of article is affected with the public interest. And in State v. Packard-Bamberger Co., supra, it was said:

"It now becomes important in this case to inquire, 'What business, if any, has been declared by the Fair Sales Act to be "affected with the public interest."'. The 'Fair Sales Act' declares not one single business enterprise to be so affected, and yet imposes restrictions upon all business."

The court then said:

"Under no sweeping conception of government or economics has there been such a sweeping deprivation of long cherished rights constitutionally reserved to the individuals, themselves, been justified under the law of the land."

It has never been declared by the Legislature that Crisco shortening, Folgers coffee, or Oxydol soap grains are essential for the preservation of the public health or that they or either of them are in any way affected, or clothed, with the public interest, and I have heretofore pointed out that the sale of cigarettes is regulated by another statute, and there is no declaration by the Legislature that an adequate supply of popular brand cigarettes is essential to the promotion or preservation of the public health, or that cigarettes are otherwise affected with the public interest.

The purpose of the act is said to be the protection of free competition, to prevent monopolies, and to prohibit destructive competition. It is now the view of some writers that in the general analysis of the cost protection theory, several years of experience under the statutes reveal them as particularly undesirable, and that the record has not shown their sanction applied to protect small sellers against large scale campaigns of underselling. That, on the contrary, the laws have been used primarily by trade associations and larger units in order to prevent price cutting and to enforce the discipline system of price leadership which these units desire to establish. It is also said that there is some evidence that the laws have been utilized as a means of raising prices. See Yale Law Journal, vol. 57, January, 1948, pp. 416-417. As to the latter assertion, it is pointed out that in the San Francisco area cost surveys successively raised the required mark-up from 6% in 1937 to 10% by 1940 when there was agitation to raise it to 12%. It is also pointed out that in Federal Trade Commission comparison of prices charged by businesses operating both in Virginia, where the law provides an 8% mark-up (6% retail and 2% wholesale), and in the District of Columbia, where no such act applies, it was found that Virginia prices were consistently higher.

In State v. Packard-Bamberger Co., supra, the author of the opinion said:

"I, therefore, feel that the right of the individual to fix his own prices cannot be infringed or denied, except in certain cases falling in well defined limits, none of which are present here."

In support thereof the court cites a long list of cases as follows:

"Ingersoll & Bro. v. Hahne & Co., 88 N. J. Eq. 222, 101 A. 1030, affirmed 89 N. J. Eq. 332, 108 A. 128;

"Wilentz v. Crown Laundry Service, Inc., 116 N. J. Eq. 40, 172 A. 331;

"Tyson & Bro. United Ticket Offices v. Banton, 273 U. S. 418, 47 S. Ct. 426, 71 L. Ed. 718, 58 A.L.R. 1236;

"Ribnik v. McBride, 277 U.S. 350, 48 S. Ct. 545, 72 L. Ed. 913, 56 A.L.R. 1327;

"Williams v. Standard Oil Co., 278 U.S. 235, 49 S. Ct. 115, 73 L. Ed. 287, 60 A.L.R. 596;

"Near v. Minnesota, 283 U.S. 697, 51 S. Ct. 625, 75 L. Ed. 1357."

In my judgment the instant case comes well within the rules there stated. It is my opinion that the business of a retail grocer is not affected or clothed with the public interest, and that no one of the articles of merchandise named in the petition is affected or clothed with the public interest, and that the well defined limits referred to in State v. Packard-Bamberger Co., supra, are not present here. I think that the Act contravenes the Fourteenth Amendment to the Federal Constitution. Tyson & Bro. United Ticket Office v. Banton, 71 L. Ed. 418, State v. Packard-Bamberger Co., supra. It is my opinion that it likewise contravenes sections 2 and 7 of article 2 of the Constitution of the State of Oklahoma, and is unconstitutional.